# IN THE SUPREME COURT OF IOWA

No. 14–0401

Filed March 11, 2016

Amended July 18, 2016

**PHUOC NGUYEN,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame Ebinger, Judge.

In this second application for postconviction relief, a defendant challenges his murder conviction under the state and federal constitutions and on state common law retroactivity grounds. **DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, John P. Sarcone, County Attorney, and Celene Gogerty, Assistant County Attorney, for appellee.

**ZAGER, Justice.**

In 1999, Phuoc Thanh Nguyen was convicted of first-degree murder. The jury was instructed on both the premeditation and felony-murder alternatives of first-degree murder. The underlying predicate felony was terrorism.[1] The use of an assaultive predicate felony was supported by a line of cases starting with *State v. Beeman,* which found willful injury to be a proper predicate felony for a felony-murder instruction. 315 N.W.2d 770, 776 (Iowa 1982). In 2006, we overturned *Beeman* in *State v. Heemstra.* 721 N.W.2d 549, 558 (Iowa 2006). In *Heemstra,* we held that when a willful injury is the same act that causes a victim's death, the two crimes merge and the act causing willful injury cannot be used as a predicate felony under the felony-murder rule. *Id.* If *Heemstra* had been controlling at the time of Nguyen's conviction, terrorism could not have been used as the predicate felony, and the felony-murder instruction could not have been given as a theory to convict Nguyen. In contemplation of our prerogative under the common law, we specifically held that the decision was not retroactive and would only be applicable to the present case and those cases not finally resolved on direct appeal. *Id.* In 2009, this court decided *Goosman v. State.* 764 N.W.2d 539, 545 (Iowa 2009). In *Goosman,* we held that the nonretroactive application of *Heemstra* does not violate the Federal Due Process Clause. *Id.*

---

[1]The crime of terrorism, which was the predicate felony in this case, is now referred to as intimidation with a dangerous weapon. *Compare* Iowa Code § 708.6 (2015), *with* Iowa Code § 708.6 (1997). In a later case, this court applied the independent felony rule to the use of intimidation with a dangerous weapon (formerly terrorism) as the predicate felony in felony murder. *State v. Millbrook,* 788 N.W.2d 647, 652–53 (Iowa 2010).

Within three years of our decision in *Heemstra,* Nguyen filed this second application for postconviction relief. In this application, Nguyen argues that his conviction should be vacated and a new trial ordered, contending that the nonretroactive application of *Heemstra* violates the due process, separation of powers, and equal protection clauses of the Iowa Constitution. Nguyen also argues it violates the Equal Protection Clause of the United States Constitution. For the first time, Nguyen further argues on appeal his postconviction counsel were ineffective for failing to raise and argue for the retroactive application of *Heemstra* under the common law.

For the reasons set forth below, we conclude that Nguyen's postconviction counsel were not ineffective. We also conclude that the nonretroactivity of the rule expressed in *Heemstra* does not violate the due process, separation of powers, or equal protection clauses of the Iowa Constitution, or the Equal Protection Clause of the United States Constitution.

## I. Background Facts and Proceedings.

In 1999, Phuoc Thanh Nguyen was convicted of first-degree murder based on alternative theories that included a felony-murder theory. On direct appeal, the court of appeals recounted the evidence presented at trial and established a number of facts that a jury could have found based on the record:

> On the afternoon of July 15, 1998, Nguyen and Dao approached "The Cloud," a Des Moines bar. Dao exited the car and expressed his interest in purchasing an ounce of cocaine. While Nguyen stayed near the car, several individuals accompanied Dao into an alley where he was beaten and robbed. After the robbery, Dao left the area on foot and Nguyen departed in the vehicle.
>
> Later the same day, a car approached The Cloud and one or more of its occupants fired several gunshots into a

crowd of people standing outside the bar. Monty Thomas was fatally shot. Two witnesses recorded the license plate of the vehicle in which the gun-toting assailants rode. When law enforcement officers stopped the vehicle later that evening, Nguyen was driving with Dao as his passenger. Dao and Nguyen were charged with first-degree murder. The defendants were tried separately.

. . . .

. . . Witness testimony linked Nguyen to the incident before, during, and after the shooting. The testimony of Rodney Martin placed Dao and a man who looked like Nguyen at The Cloud shortly before the shooting. While the man resembling Nguyen remained in the driver's seat of the car parked near the bar, Dao and a third individual solicited drugs from Martin. Martin testified Dao was beaten and robbed following the unsuccessful cocaine purchase, and Nguyen and the third person drove away from the bar. Confirming this testimony, Owen Smith described a conversation he had with Nguyen while Dao was in the alley attempting to purchase drugs. Smith testified he spoke to Nguyen for ten to fifteen minutes before Nguyen left the scene.

Nguyen was also recognized as the driver of the car that arrived at The Cloud transporting the armed participants in the shooting. Elgin Byron, a teller at the local bank where Nguyen was a regular customer, identified Nguyen as the driver of the car involved in the shooting. He recalled the black Mitsubishi Nguyen drove to the bar on the day in question as the same car Nguyen had brought to the bank on prior occasions. Shawn Duncan, who also observed the black automobile, identified Dao as an occupant of the car who fired a gun in his direction. Similarly, David Gray witnessed Dao shooting from the black car. Gray noted the car's license plate number, which matched that of the car Nguyen and Dao were arrested in later that evening.

After the shooting, law enforcement officers observed a black Mitsubishi matching the description of the vehicle and license plate number given by eyewitnesses to the crime. Upon stopping the car, they arrested its driver, Nguyen, and the vehicle's backseat passenger, Dao. Two bullet holes in the vehicle's trunk were of a size consistent with the .45 caliber casings found outside The Cloud. The man who loaned the black Mitsubishi to Nguyen testified the first time he noticed the trunk bullet holes was upon recovering his car from police after Nguyen's arrest. Lastly, Nguyen made an incriminating statement regarding his involvement in the shooting. An officer testified upon telling Nguyen he was

being arrested for his role in The Cloud homicide, Nguyen replied "all he did was drive the car."

*State v. Nguyen*, No. 99–1444, 2002 WL 575746, at *1–2 (Iowa Ct. App. Mar. 13, 2002). Nguyen raised several issues before the court of appeals on direct appeal including insufficiency of the evidence, the Confrontation Clause, and ineffective assistance of counsel. The court of appeals affirmed his conviction on March 13, 2002, and procedendo issued on May 30.

In August 2002, Nguyen filed his first application for postconviction relief in the district court. He asserted new claims of ineffective assistance of counsel primarily related to trial counsel's failure to raise certain evidentiary objections. The district court found that his counsel was ineffective and ordered a new trial. The State appealed the decision, and we transferred the case to the court of appeals. The court of appeals reversed the district court. Nguyen applied for, and we granted, further review. On December 23, 2005, we concluded that Nguyen did not establish the requisite prejudice to support his claims of ineffective assistance of counsel. We vacated the decision of the court of appeals and reversed the judgment of the district court. Procedendo issued on January 19, 2006.

In August 2006, we issued our opinion in *Heemstra.* This opinion overruled a long line of cases, starting with *Beeman.*[2] *Heemstra*, 721 N.W.2d at 558. *Heemstra* held that if an act causing willful injury is the same act that causes a victim's death, the two crimes merge and the act causing willful injury cannot be used as the predicate felony under the

---

[2]*Beeman*'s progeny, all of which we overruled in *Heemstra*, include *State v. Anderson*, 517 N.W.2d 208, 214 (Iowa 1994); *State v. Rhomberg*, 516 N.W.2d 803, 805 (Iowa 1994); *State v. Ragland*, 420 N.W.2d 791, 793 (Iowa 1988); and *State v. Mayberry*, 411 N.W.2d 677, 682–83 (Iowa 1987).

felony-murder rule.  *Id.*  Our opinion in *Heemstra* stated that the decision would be applicable only to the present case and to cases not finally resolved on direct appeal.  *Id.*  As previously stated, if *Heesmtra* had been controlling authority at the time of Nguyen's conviction rather than *Beeman,* it would have eliminated the felony-murder theory of first-degree murder as a viable theory on which Nguyen could be convicted.

On April 2, 2009, Nguyen filed pro se this second application for postconviction relief.  On the same day, he filed a pro se brief in support of his application.  On April 17, we decided *Goosman,* which held that *Heemstra*'s nonretroactivity does not violate the Federal Due Process Clause.  764 N.W.2d at 545.  On March 19, 2010, court-appointed counsel filed a motion to withdraw on the basis that she found no legal grounds to proceed after the *Goosman* decision.  The district court granted the motion to withdraw and appointed substitute counsel to represent Nguyen in his postconviction relief action.  Nguyen's substitute counsel also moved to withdraw on the same grounds, but the district court denied the motion.

On October 6, the State moved for summary disposition.  The State noted that procedendo in the first postconviction relief action issued more than three years before Nguyen filed his second postconviction relief action.  Therefore, the State argued, the action was barred by the statute of limitations.  Nguyen filed a resistance, arguing that the action was not barred by the statute of limitations because it was based on the *Heemstra* decision and therefore fell within the exception for "a ground of fact or law that could not have been raised within the applicable time period." Iowa Code § 822.3 (2009).  Nguyen acknowledged that *Goosman* foreclosed an argument under the Federal Due Process Clause.  However, Nguyen argued that retroactivity was required under the Federal Equal

Protection Clause and under the due process, separation of powers, and equal protection clauses of the Iowa Constitution. None of these arguments were raised or decided in *Goosman. See* 764 N.W.2d at 545.

The district court granted the State's motion and Nguyen appealed. We retained Nguyen's appeal and reversed the district court's dismissal of Nguyen's postconviction relief application on statute of limitation grounds. *Nguyen v. State*, 829 N.W.2d 183, 189 (Iowa 2013). We determined that Nguyen's postconviction relief application fell within the exception contained in Iowa Code section 822.3 because Nguyen could not have argued for the retroactive application of *Heemstra* until after *Heemstra* had been decided. *Id.* at 188. Since Nguyen had filed his application for postconviction relief within three years, his claims as to retroactivity were not time-barred. *Id.* We remanded the case to the district court to hear the merits of Nguyen's arguments that *Heemstra* must be applied retroactively under the due process, separation of powers, and equal protection clauses of the Iowa Constitution or the Equal Protection Clause of the United States Constitution. *Id.* at 189. Procedendo issued on April 18.

The district court appointed new counsel to represent Nguyen and ordered Nguyen's postconviction relief case be consolidated with two other applicants who were also pursuing the retroactive application of *Heemstra.* Nguyen, along with Tony Sihavong and Thanh Dao, filed a consolidated trial brief. They argued that if the rule in *Heemstra* applied, each applicant would be entitled to a new trial. Further, they argued retroactive application of *Heemstra* was required under the constitutional theories we identified in Nguyen's appeal. *See id.* The district court held a joint postconviction relief trial for Nguyen, Dao, and Sihavong. The district court denied all three claims for postconviction relief. It ruled

that the claims of Dao and Shihavong were procedurally barred. It also considered all of the constitutional claims raised by Nguyen and held the nonretroactivity of *Heemstra* was not unconstitutional under any of the theories raised.

Nguyen filed a notice of appeal. He appealed each ruling of the district court on the constitutional challenges and for the first time raised an ineffective-assistance-of-counsel claim for the failure of postconviction counsel to argue for the retroactive application of *Heemstra* on nonconstitutional, common law grounds. Nguyen requested that the merits of his nonconstitutional, common law claim be considered under the ineffective-assistance-of-postconviction-counsel framework.

## II. Standard of Review.

"Generally, an appeal from a denial of an application for postconviction relief is reviewed for correction of errors at law." *Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012) (quoting *Goosman*, 764 N.W.2d at 541). However, "[u]nder both the State and Federal Constitutions, ineffective-assistance-of-counsel claims are reviewed de novo." *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). We review these claims de novo because they are based on the constitutional guarantees of the effective assistance of counsel found in the Sixth Amendment of the U.S. Constitution and article I, section 10 of the Iowa Constitution. *See State v. McNeal*, 867 N.W.2d 91, 99 & n.1 (Iowa 2015).

Ineffective-assistance-of-counsel claims are not bound by traditional rules of error preservation. *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). "To the extent error is not preserved on an issue, any objections must be raised within an ineffective-assistance-of-counsel framework." *State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015).

### III. Analysis.

In pertinent part, the Iowa Code in force at the time of Nguyen's crime defined first-degree murder as a murder that occurs when a person "willfully, deliberately, and with premeditation kills another person" or when a person "kills another person while participating in a forcible felony." Iowa Code § 707.2 (1997).

When Nguyen was convicted, *Beeman* and its progeny were controlling law. In *Beeman*, the court held that Iowa's first-degree murder statute made willful injury a proper predicate felony for a felony-murder instruction. 315 N.W.2d at 776. We concluded the legislature neither intended for the felonies to merge nor required an independent felony for the felony-murder rule to apply. *Id.* at 777. Under the *Beeman* line of cases, it was proper for a jury to be instructed on felony murder even when the act that constituted the underlying felony was also the same act that caused the victim's death. *See id.*

We overruled *Beeman* in *Heemstra.* 721 N.W.2d at 558. We adopted the merger doctrine for felony murder and held "if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes." *Id.* In *Heemstra*, we also stated that the rule announced in the case would only be applicable to "those cases not finally resolved on direct appeal in which the issue has been raised in the district court." *Id.* Three years later, we held in *Goosman* that the nonretroactivity of *Heemstra* did not violate federal due process. 764 N.W.2d at 545. Nguyen now challenges the nonretroactivity of *Heemstra* under the due process, separation of powers, and equal protection clauses of the Iowa Constitution and the Equal Protection Clause of the United States Constitution. Alternatively,

Nguyen argues that postconviction counsel were ineffective for failing to additionally urge the retroactive application of *Heemstra* on nonconstitutional, common law grounds.

Our doctrine of constitutional avoidance instructs us that we should "steer clear of 'constitutional shoals' when possible." *State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 85 (Iowa 2014). Therefore, we will analyze whether postconviction counsel were ineffective before determining whether we need to address the constitutional arguments.

**A. Ineffective Assistance of Postconviction Counsel.** Nguyen claims his postconviction counsel were ineffective for failing to pursue *Heemstra* retroactivity on nonconstitutional, common law grounds.

1. *Statute of limitations.* The State argues that Nguyen's ineffective-assistance-of-counsel claim is time-barred by Iowa Code section 822.3, which covers the statute of limitations for postconviction relief actions. In relevant part, this section states:

> [A]pplications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued. However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.

Iowa Code § 822.3 (2009). Nguyen's current application for postconviction relief was filed on April 2, 2009. It is not clear at what point the State alleges the statute of limitations began running on Nguyen's ineffective-assistance-of-counsel claim. However, it appears the State argues that the limitation period began to run at the time counsel was allegedly ineffective—when counsel failed to raise the issue of common law retroactivity.

We find that the claim is not time-barred. In his April 2009 pro se brief filed in support of his second application for postconviction relief,

Nguyen clearly asserted that *Heemstra* should be applied retroactively to his case, thereby entitling him to a new trial. While not specifically referring to it as such, Nguyen also discusses the *Teague/Bousley/Schriro*—i.e., common law—framework for evaluating the retroactive application of state decisions. *See Schriro v. Summerlin*, 542 U.S. 348, 351–52, 124 S. Ct. 2519, 2522–23, 159 L. Ed. 2d 442, 448 (2004); *Bousley v. United States*, 523 U.S. 614, 620–21, 118 S. Ct. 1604, 1610, 140 L. Ed. 2d 828, 838–39 (1998); *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 1075 103 L. Ed. 2d 334, 356 (1989). This brief put the issue of common law retroactivity into play.

After counsel was appointed, the district court granted summary judgment to the State on all of the grounds alleged in the postconviction relief application. Following an appeal, on March 22, 2013, this court reversed the decision of the district court and remanded the case to consider only the state and federal constitutional claims raised in Nguyen's 2009 postconviction relief application. This is the point in the proceedings when the common law claim was lost to Nguyen because the scope of the district court's consideration of the postconviction relief application on remand was limited by this court's pronouncement. *See In re Marriage of Davis*, 608 N.W.2d 766, 769 (Iowa 2000). Therefore, if postconviction counsel intended to raise the common law retroactivity argument, it would have been their duty to file a rule 6.1205 petition for rehearing with this court asking for a modified disposition to permit Nguyen to present his common law argument to the district court on remand. Iowa R. App. P. 6.1205. The first time counsel could have been ineffective was April 5, 2013, the day the deadline passed for a rule 6.1205 petition. Nguyen raised his ineffective-assistance-of-counsel claim on April 13, 2015, comfortably within the three-year statute of

limitations. Therefore, Nguyen's allegation of ineffective assistance of counsel is timely.

2. *Merits of ineffective-assistance-of-counsel claim.* "The right to assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution is the right to 'effective' assistance of counsel." *Ambrose*, 861 N.W.2d at 556 (quoting *State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010)). When we evaluate ineffective-assistance-of-counsel claims, we apply a two-pronged test. *State v. Gaskins*, 866 N.W.2d 1, 5 (Iowa 2015). We ask if trial counsel breached an essential duty. *Id.* We also ask whether prejudice resulted from said breach. *Id.* The defendant has the burden of proving both elements by a preponderance of the evidence. *See State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015).

Under the first prong, when we decide whether counsel's performance was deficient, "we measure counsel's performance against the standard of a reasonably competent practitioner." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) (quoting *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012)). "We assess counsel's performance 'objectively by determining whether [it] was reasonable, under prevailing professional norms, considering all the circumstances.'" *Id.* (alteration in original) (quoting *State v. Lyman*, 776 N.W.2d 865, 878 (Iowa 2010)). It is presumed that counsel acted competently, and therefore, the defendant must overcome that presumption. *See Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674, 694–95 (1984).

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action "might be considered sound trial strategy."

*Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83, 93 (1955)). In this case, we must determine whether Nguyen's postconviction counsel failed to perform an essential duty by not pursuing the nonconstitutional, common law retroactivity claim.

We note that in his pro se brief, Nguyen raised both constitutional and common law claims in support of his argument for the retroactive application of *Heemstra*. We also note that we have not yet adopted the federal per se framework Nguyen advances in his brief for evaluating the retroactive effect of our own state cases.

In 1965, the United States Supreme Court decided *Linkletter v. Walker*, which adopted a practical balancing test that considered a number of factors in determining whether a United States Supreme Court case should be applied retroactively. 381 U.S. 618, 629, 85 S. Ct. 1731, 1738, 14 L. Ed. 2d 601, 608 (1965), *abrogated by Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987). Soon thereafter, we began using the same *Linkletter* balancing framework to determine the retroactivity of our own state supreme court decisions. *See, e.g.*, *Everett v. Brewer*, 215 N.W.2d 244, 247–48 (Iowa 1974).

Since our decision in *Everett*, the United States Supreme Court has developed a different framework in analyzing retroactivity. The Court eventually stopped using the *Linkletter* balancing approach because of difficulties in its application. *See Teague*, 489 U.S. at 302–05, 109 S. Ct. at 1071–73, 103 L. Ed. 2d at 350–52. In a trilogy of cases, the Supreme Court adopted a new, per se framework for evaluating the retroactivity of

its own decisions to already-final cases.[3] *See Schriro*, 542 U.S. at 351–52, 124 S. Ct. 2522–23, 159 L. Ed. 2d at 448; *Bousley*, 523 U.S. 620–21, 118 S. Ct. 1610, 140 L. Ed. 2d at 838–39; *Teague*, 489 U.S. at 310, 109 S. Ct. at 1075, 103 L. Ed. 2d at 356. As in *Linkletter*, this per se approach was adopted to determine the retroactivity of already-final United States Supreme Court cases. *See, e.g.*, *Teague*, 489 U.S. at 310, 109 S. Ct. at 1075, 103 L. Ed. 2d at 355–56. This is the approach Nguyen urges us to adopt and apply in determining the retroactive application of our own state supreme court cases.[4]

Without expressly adopting the federal per se framework, we have applied a similar per se framework to evaluate the retroactive effect of United States Supreme Court cases. *See, e.g.*, *State v. Ragland*, 836 N.W.2d 107, 114 (Iowa 2013); *Perez*, 816 N.W.2d at 358–59; *Goosman*,

---

[3]As discussed in detail below, the United States Supreme Court has summarized its per se approach since its decision in *Schriro*:

> [A]n old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review. A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a " 'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."

*Whorton v. Bockting*, 549 U.S. 406, 416, 127 S. Ct. 1173, 1180–81, 167 L. Ed. 2d 1, 10–11 (2007) (second alteration in original) (citation omitted) (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S. Ct. 1257, 1264, 108 L. Ed. 2d 415, 429 (1990)).

[4]Nguyen has submitted additional authority on the federal approach to retroactivity. *See Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016). However, *Montgomery* does not assist us in deciding this case. In *Montgomery*, the United States Supreme Court stated,

> The Court now holds that when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule. *Teague*'s conclusion establishing the retroactivity of new substantive rules is best understood as resting upon constitutional premises.

*Id.* at ___, 136 S. Ct. at 729, 193 L. Ed. 2d at 614. *Heemstra* did not create a new substantive rule of constitutional dimension.

764 N.W.2d at 540, 544–45; *Morgan v. State*, 469 N.W.2d 419, 422 (Iowa 1991).

We likewise fully considered common law retroactivity in deciding *Heemstra.* Following our initial opinion in *Heemstra*, there were concerns about the retroactive or prospective application of our ruling. The State applied for rehearing and asked for guidance on the issue of retroactivity. In the application for rehearing, the State argued that we should only apply *Heemstra* prospectively. The application, however, noted that we had four options in determining the issue of retroactivity. We could apply full retroactivity, limited retroactivity, limited prospectivity, or full prospectivity. This is because in nonconstitutional cases, we have the ability to give a new rule only prospective application when we overrule one of our own prior decisions. *See State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000).

At the time we determined that *Heemstra* would only apply prospectively, we were aware of the possibility of the common law remedy now advanced by Nguyen; however, we declined to adopt the per se approach to our decision. We relied on and considered the authority presented within the petition for rehearing and decided under the common law that *Heemstra* would have prospective application only. We adhere to our decision in *Heemstra* and see no legitimate reason to change it. *Bierman v. Weier*, 826 N.W.2d 436, 459 (Iowa 2013) (noting that precedent should not be set aside lightly because of the importance of stare decisis for stability under the law). Since the common law application of retroactivity was fully contemplated in *Heemstra*, postconviction counsel had no duty to pursue a meritless claim. *Halverson*, 857 N.W.2d at 635.

Additionally, in 2013, we remanded Nguyen's case to specifically address the question of "whether retroactive application of *Heemstra* is required by the equal protection, due process, and separation of powers clauses of the Iowa Constitution, or the Equal Protection Clause of the United States Constitution." *Nguyen*, 829 N.W.2d at 189. When a case is remanded for a special purpose, "the district court upon such remand is limited to do the special thing authorized by the appellate court in its opinion and nothing else." *Davis*, 608 N.W.2d at 769. Because the district court was limited to hear only the constitutional claims on remand, counsel cannot be ineffective for failing to raise common law grounds for relief. A reasonable attorney faced with such a remand order would not be expected to raise alternate arguments.

Because the test for ineffective assistance of counsel is a two-pronged test, a defendant must show both prongs have been met. *Dempsey*, 860 N.W.2d at 868. If the defendant fails "to establish either of these elements, we need not address the remaining element." *Id.* Since we conclude that counsel did not fail to perform an essential duty, we need not address the prejudice prong of the ineffective-assistance-of-counsel analysis. Because we conclude that postconviction counsel were not ineffective, we proceed to review Nguyen's constitutional claims.

**B. Constitutional Claims.** Nguyen alleges that the nonretroactivity of *Heemstra* violates the due process, separation of powers, and equal protection clauses of the Iowa Constitution and the Equal Protection Clause of the United States Constitution. We address each in turn.

1. *Due process clause of the Iowa Constitution.* In *Goosman*, we held that the Due Process Clause of the United States Constitution does not require the retroactive application of *Heemstra* to individuals whose

direct appeals were final prior to the decision. 764 N.W.2d at 545. We found that the decision in *Heemstra* was substantive rather than procedural and considered two United States Supreme Court decisions that addressed the retroactive application of state supreme court decisions affecting substantive criminal law. *Id.* at 542–43; *see Bunkley v. Florida*, 538 U.S. 835, 840 123 S. Ct. 2020, 2023, 155 L. Ed. 2d 1046, 1051 (2003); *Fiore v. White*, 531 U.S. 225, 227–28, 121 S. Ct. 712, 714 148 L. Ed. 2d 629, 633 (2001). Based on those two cases, we noted that federal due process only requires retroactive application of *clarifications* to existing substantive law, not *changes* to substantive law:

> Taken together, *Fiore* and *Bunkley* stand for two propositions. First, where a court announces a new rule of substantive law that simply "clarifies" ambiguities in existing law, federal due process requires that the decision be retroactively applied to all cases, including collateral attacks where all avenues of direct appeal have been exhausted. Second, where a court announces a "change" in substantive law which does not clarify existing law but overrules prior authoritative precedent on the same substantive issue, federal due process does not require retroactive application of the decision.

*Goosman*, 764 N.W.2d at 544.

Because we determined that the ruling in *Heemstra* constituted a change in the law rather than a clarification, we held that federal due process does not require retroactive application of *Heemstra* to already-final direct appeals. *Id.* at 545. Our analysis in *Goosman* focused solely on the application of federal due process to retroactivity but never reached an independent analysis of the state due process clause. We now turn our analysis to the Iowa Constitution.

The Iowa Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. This court has generally considered the federal and state due

process clauses to be "identical in scope, import[,] and purpose." *War Eagle Vill. Apartments v. Plummer*, 775 N.W.2d 714, 719 (Iowa 2009) (quoting *State v. Bower*, 725 N.W.2d 435, 441 (Iowa 2006)). However, we note that we "jealously guard our right and duty to differ in appropriate cases." *State v. Short*, 851 N.W.2d 474, 513 (Iowa 2014) (quoting *State v. Cline*, 617 N.W.2d 277, 285 (Iowa 2000)). "Even in these cases in which no substantive distinction had been made between state and federal constitutional provisions, we reserve the right to apply the principles differently under the state constitution compared to its federal counterpart." *Gaskins*, 866 N.W.2d at 6 (quoting *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011)). We are free to interpret our constitution more stringently than its federal counterpart, providing greater protection for our citizens' constitutional rights. *See, e.g., id.* at 13–14; *Iowa Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 4–5, 16 (Iowa 2004). However, "our independent authority to construe the Iowa Constitution does not mean that we generally refuse to follow the United States Supreme Court decisions." *Short*, 851 N.W.2d at 490.

Nguyen argues that we should exercise our discretion to interpret our state due process clause differently than the Federal Due Process Clause and urges us to provide greater protections for citizens under the Iowa Constitution. The State responds that this court should utilize the same analysis under our state due process clause as we did for the Federal Due Process Clause in *Goosman*. In support of its argument for analyzing the state due process clause in an identical manner, the State argues there is a presumption in favor of upholding lawfully-obtained convictions, citing *State v. Thompson.* 856 N.W.2d 915, 920 (Iowa 2014) (noting that the principle of stare decisis respects prior precedent and does not require the court to overturn a case because it may have

reached a different outcome). The State also raises public policy considerations if the court were to depart from the federal analysis. The State cautions that there are practical concerns with ordering a new trial for a murder that occurred seventeen years ago—fading memories, unavailable witnesses, and renewed trauma for the victim's family.

However, because Nguyen's case falls squarely within the class of cases for which the federal courts have decided retroactivity is not required under due process, we do not find a compelling reason to depart from the federal analysis we used in *Goosman*. Nor has Nguyen offered an alternative framework that we find sufficiently compelling to justify a departure from the federal analysis. *See Hensler v. City of Davenport*, 790 N.W.2d 569, 579 & n.1 (Iowa 2010) (noting that even when a party does advance a standard for interpreting the Iowa Constitution differently, we may still interpret it using the federal analysis if we find that analysis more compelling). We therefore hold that under Iowa's due process clause, the Iowa Constitution does not require the retroactive application of *Heemstra* to individuals whose direct appeals were final prior to the *Heemstra* decision.

2. *Iowa separation of powers clause.* The Iowa Constitution provides,

> The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. art. III, § 1.

Nguyen argues that the *Beeman* decision that allowed defendants in Nguyen's situation to be convicted of first-degree murder violated the separation of powers doctrine of the Iowa Constitution. Under *Beeman*

and its progeny, Nguyen and others like him were convicted of first-degree murder under the felony-murder doctrine when the act causing willful injury was the same act causing the victim's death. *See Beeman*, 315 N.W.2d at 776. In *Heemstra*, we overruled the *Beeman* line of cases and adopted the merger doctrine. *Heemstra*, 721 N.W.2d at 558.

Nguyen correctly asserts that defining crimes is a legislative function. He argues that the *Beeman* decision allowed defendants like himself to be convicted of first-degree murder for conduct the legislature did not intend to constitute that offense—namely, willful injury that was the same act that caused the victim's death. He further contends that due to our decision in *Heemstra*, the *Beeman* decision was a judicial abrogation of the legislature's definition of first-degree murder, which violated the separation of powers doctrine.

The State responds that this is a "chicken and egg" argument and that it could be argued that either *Heemstra* or *Beeman* amounted to a violation of the separation of powers doctrine. However, the State asserts that rather than a violation of the separation of powers, *Beeman* was an attempt to interpret the law. Although we later changed our interpretation of the law in *Heemstra*, the State responds that interpretational evolution happens often in the law.

Further, we addressed this argument in our *Heemstra* opinion. First, we noted that

> nothing in any of the statutes . . . suggests that the legislature had any intent to abolish the principle of merger under the circumstances of this case. Furthermore, we should not defer to the legislature for a signal for us to adopt a legal principle that is the responsibility of the court and within the power of the court to apply, based on legal precedent, common sense, and fairness.

*Id.*

We also stated that "[t]he legislature has never considered the issue of whether, when the act causing willful injury is the same as that causing death, the two acts should be deemed merged." *Id.* at 557. Because of this, we determined that we "should not attribute to the legislature an intent to 'create[] an ever-expanding felony murder rule' by characterizing every willful injury as a forcible felony for felony-murder purposes." *Id.* at 558 (alteration in original) (quoting 4 Robert R. Rigg, *Iowa Practice Series: Criminal Law* § 3:16 (2006)).

In *Heemstra*, we did not see our decision as encroaching on the legislative function in violation of the separation of powers. Because we effectively rejected this same argument in *Heemstra*, we now also reject the argument as applied to *Beeman*. In neither *Heemstra* nor *Beeman* did we encroach on the legislative branch. Rather, we properly performed our function in interpreting the law by considering the legislative intent behind the first-degree murder statute and the felony-murder doctrine.

3. *Equal protection claims.* Both the Fourteenth Amendment to the United States Constitution and article I, section 6 of the Iowa Constitution provide all citizens equal protection under the law. U.S. Const. amend. XIV; Iowa Const. art. I, § 6. This requires that "similarly situated persons be treated alike under the law." *Jud. Branch v. Iowa Dist. Ct.*, 800 N.W.2d 569, 578–79 (Iowa 2011) (quoting *In re Det. of Williams*, 628 N.W.2d 447, 452 (Iowa 2001)); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313, 320 (1985). More precisely, "the equal protection guarantee requires that laws treat all those who are similarly situated *with respect to the purposes of the law* alike." *Varnum v. Brien*, 763 N.W.2d 862, 883 (Iowa 2009). Although we have "generally applied the same analysis to

federal and state equal protection claims, this court has not foreclosed the possibility that there may be situations where differences in the scope, import, or purpose of the two provisions warrant divergent analyses." *In re Det. of Hennings*, 744 N.W.2d 333, 338 (Iowa 2008) (quoting *Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 5). Generally, when the parties have not argued that our analysis under the Iowa Constitution should differ from our analysis under the Federal Constitution, we decline to apply divergent analyses. *See, e.g., State v. Wade*, 757 N.W.2d 618, 624 (Iowa 2008). However, Nguyen requests that based on the distinction between direct review and collateral review applications, we should provide greater protection under the Iowa Constitution.

The Supreme Court has clearly stated that in situations such as these, it does not violate the Federal Constitution for states to choose to apply the holding of a case prospectively rather than retroactively. *See Wainwright v. Stone*, 414 U.S. 21, 23–24, 94 S. Ct. 190, 193, 38 L. Ed. 2d 179, 182 (1973); *see also Hill v. Roberts*, 793 F. Supp. 1044, 1045 (D. Kan. 1992) ("The decision of a state court to make a ruling retroactive or prospective raises no constitutional issue."); *Northrop v. Alexander*, 642 F. Supp. 324, 327 (N.D. Cal. 1986) ("The retroactivity of a state change of law is a state question and 'the federal constitution has no voice upon the subject.'" (quoting *Great N. Ry. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364, 53 S. Ct. 145, 148, 77 L. Ed. 360, 366 (1932)).

> A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions.

*Wainwright*, 414 U.S. at 23–24, 94 S. Ct. at 193, 38 L. Ed. 2d at 182 (quoting *Great N. Ry.*, 287 U.S. at 364, 53 S. Ct. at 148, 77 L. Ed. at 366.) Thus, we reject Nguyen's assertion that our prospective-only application of *Heemstra* violates the Federal Equal Protection Clause.

The first step in our equal protection analysis under the Iowa Constitution is to determine whether there is a distinction made between similarly situated individuals. *See Varnum*, 763 N.W.2d at 882.

> This requirement of equal protection—that the law must treat all similarly situated people the same—has generated a narrow threshold test. Under this threshold test, if plaintiffs cannot show as a preliminary matter that they are similarly situated, courts do not further consider whether their different treatment under a statute is permitted under the equal protection clause.

*Id.* In *Varnum*, we noted that it is sometimes difficult to apply this threshold test and that we sometimes have "directly or indirectly infused [our] analysis with principles traditionally applied in the complete equal protection analysis." *Id.* at 884 n.9. We have attributed the difficulty in applying the threshold test to the "inescapable relationship between the threshold test and the ultimate scrutiny of the . . . basis for the classification." *State v. Dudley*, 766 N.W.2d 606, 616 (Iowa 2009).

The State argues that *Heemstra* created two different classes of defendants: defendants whose convictions were final before the decision and defendants whose convictions became final after the decision. The State asserts that a person who was convicted before *Heemstra* is not similarly situated to a person charged with the same crimes after *Heemstra* changed the law.

In *Everett*, this court heard a similar—though not identical— argument by a defendant. 215 N.W.2d at 245–46. In that case, the defendant was convicted of larceny of a motor vehicle. *Id.* at 245. After

his conviction became final, the court heard two cases that changed the law. *Id.* at 246. Had the defendant challenged his conviction after these cases rather than before, his conviction would have been reversed. *Id.* Among other claims, the defendant challenged the difference between those whose convictions were final and those whose convictions were not yet final under the equal protection clause of the Iowa Constitution. *Id.* We held that the defendant was not denied equal protection of the laws under the Iowa Constitution because we found "there is a rational basis for classifying appellants in accordance with whether their claim previously has been fully considered and adjudicated." *Id.* at 247. Because it is consistent with our previous cases to find that the distinction between direct review and collateral review applications does not violate the equal protection clause of the Iowa Constitution, we decline to adopt a more restrictive standard than that of the clause's federal counterpart.

We agree with the State that defendants whose convictions became final before the law changed in *Heemstra* are not similarly situated to defendants charged after *Heemstra*. Nguyen was not denied equal protection of the laws under the Iowa Constitution.

## IV. Conclusion.

For the reasons set forth above, we conclude that Nguyen's postconviction counsel were not ineffective for failing to pursue a nonconstitutional, common law retroactivity argument. We also conclude that the nonretroactive application of *Heemstra* does not violate the due process, separation of powers, or equal protection clauses of the Iowa Constitution or the Equal Protection Clause of the United States Constitution.

**DISTRICT COURT JUDGMENT AFFIRMED.**