# IN THE COURT OF APPEALS OF IOWA

No. 16-2112
Filed November 7, 2018

**JIMMY DEAN STEVENS,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Black Hawk County, David P.
Odekirk, Judge.


        Jimmy Stevens appeals the dismissal of his application for postconviction
relief. **AFFIRMED.**



        Geneva L. Williams of Williams Law Office, PLLC, Cedar Rapids, for
appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney
General, for appellee State.



        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

**I.      Background Facts and Proceedings**

In 2004, Jimmy Stevens was convicted of criminal transmission of human immunodeficiency virus (HIV).[1]  Stevens appealed his conviction, challenging the sufficiency of the evidence on the intimate-contact element of the crime,[2] and the supreme court affirmed, concluding "sexual intercourse may be committed through oral sex" and the jury could rely on the "common knowledge that oral sex is a manner of transmission of the HIV."  *See State v. Stevens*, 719 N.W.2d 547, 548–52 (Iowa 2006).[3]  Procedendo issued in September 2006.

Stevens filed his first postconviction-relief (PCR) application in July 2007. The application was dismissed upon Stevens's own motion in May 2013.  Stevens filed his second PCR application in October 2014, arguing his conviction should be overturned in light of the supreme court's decision in *Rhoades v. State*, 848 N.W.2d 22 (Iowa 2014).  The State moved to dismiss the application on statute-of-limitations grounds.  *See* Iowa Code § 822.3 (2014).  The district court granted the State's motion, concluding the argument forwarded by the applicant in *Rhoades* "could have been raised by [Stevens] within three years after the writ of

---

[1] Chapter 709C, entitled criminal transmission of HIV, was repealed by the legislature in 2014.  2014 Iowa Acts ch. 1119, § 9.  It was replaced by chapter 709D, entitled criminal transmission of contagious or infectious diseases.  *See id.* §§ 1–4 (codified at Iowa Code §§ 709D.1–.4).

[2] *See* Iowa Code § 709C.1(1)(a), (2)(b) (2003) (requiring proof of intimate contact with another and defining intimate contact as "intentional exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of the [HIV]").

[3] *See also State v. Keene*, 629 N.W.2d 360, 365 (Iowa 2001) ("We take judicial notice of the fact that the HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus" because "any reasonably intelligent person is aware it is possible to transmit HIV during sexual intercourse, especially when it is unprotected").

procedendo issued following his appeal." On appeal, a panel of this court concluded "the *Rhoades* decision was a change in the law 'that could not have been raised within the applicable time period,' and the three-year bar should not prevent Stevens from challenging his conviction through PCR." *Stevens v. State*, No. 15-1033, 2016 WL 1696909, at *3 (Iowa Ct. App. Apr. 27, 2016) (quoting Iowa Code § 822.3), *further review denied* (July 29, 2016). This court reversed the denial of Stevens's PCR application and remanded the matter to the district court to consider "whether the *Rhoades* case should be retroactively applied." *Id.* at *4.

On remand, Stevens conceded the United States Constitution did not require retroactive application of *Rhoades*, but "urge[d] the court to turn to the analysis of the Iowa Constitution" and conclude retroactive application of *Rhoades* is required by the due process and equal protection clauses of our state constitution. Finding Stevens failed to provide a compelling reason to depart from the federal constitutional framework or propose a different framework under the Iowa Constitution, the district court concluded retroactive application of *Rhoades* is not constitutionally required. The district court dismissed Stevens's PCR application, and this appeal followed.

## II.     Standard of Review

PCR proceedings are reviewed for correction of errors at law unless they raise constitutional issues. *More v. State*, 880 N.W.2d 487, 489 (Iowa 2016). Where, as here, there is an alleged violation of constitutional rights, our review is de novo. *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010).

## III.    Analysis

On appeal, Stevens contends the district court erred in concluding retroactive application of *Rhoades* is not required by the due process clause of the state constitution and the equal protection clauses of the federal and state constitutions.[4]   Alternatively, he argues his PCR counsel rendered ineffective assistance in failing to urge retroactive application of *Rhoades* on nonconstitutional common law grounds.

As an additional backdrop, in 2001, the supreme court took "judicial notice of the fact that the HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus."  *Keene*, 629 N.W.2d at 365.  Such taking of judicial notice "filled in the gaps" for a factual basis on the intimate-contact element of the crime of criminal transmission of HIV, which Keene committed in 1998.  *Rhoades*, 848 N.W.2d at 32 (discussing *Keene*, 629 N.W.2d at 362, 365–67).  Following *Keene*, the supreme court determined Stevens's 2004 conviction was supported by sufficient evidence because a jury at that time could rely on the "common knowledge that oral sex is a manner of transmission of the HIV."  *See Stevens*, 719 N.W.2d at 552.  The *Stevens* court, in analyzing Stevens's 2003 acts resulting in conviction of criminal transmission of HIV,

> again recognized the adjudicative "'fact that . . . HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus'" continued to be common

---

[4] Stevens conceded in the district court that his "federal Equal Protection Clause argument should fail."  Because the State does not contest error preservation and Stevens argues his counsel was ineffective in the event error was not preserved on his constitutional claims, we will consider the merits.

knowledge to establish the evidence was sufficient to support a conviction under section 709C.1.

*Rhoades*, 848 N.W.2d at 32 (ellipsis in original) (discussing *Stevens*, 719 N.W.2d at 550–52). The court also explained that "sexual intercourse may be committed through oral sex" and "oral sex is a well-recognized means of transmission of the HIV." *Stevens*, 719 N.W.2d at 551. *Keene* and *Stevens* were revisited in *Rhoades*. *See Rhoades*, 848 N.W.2d at 32–33. As to Rhoades's conviction of the same crime flowing from his conduct in 2008, the supreme court explained:

> Today we are unable to take judicial notice that an infected individual can transmit HIV when an infected person engages in protected anal sex with another person or unprotected oral sex, regardless of the infected person's viral load. The evidence at the postconviction relief hearing shows there have been great strides in the treatment and the prevention of the spread of HIV from 2003 to 2008. It was not apparent in 2009, at the time of [Rhoades's] plea, that this fact was "capable of accurate and ready determination by resort to sources whose accuracy" could not reasonably be questioned. Further, while this fact may have been a commonly held *belief* within the territorial jurisdiction of the trial court, we note the purpose of judicial notice is to show the fact is not subject to reasonable dispute. Here, we find the fact was subject to reasonable dispute. At the time of the plea, Rhoades's viral count was nondetectable, and there is a question of whether it was medically true a person with a nondetectable viral load could transmit HIV through contact with the person's blood, semen or vaginal fluid or whether transmission was merely theoretical. The judicial notice we took in previous cases is subject to reasonable dispute here; thus, it is improper for us to similarly take judicial notice in this case. With the advancements in medicine regarding HIV between 2003 and 2008, we are unable to take judicial notice of the fact that HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus to fill in the gaps to find a factual basis for Rhoades's guilty plea.

*Rhoades*, 848 N.W.2d at 32–33 (footnote and citations omitted). With this landscape in mind, we consider Stevens's contentions in turn.

A.      State Due Process

Stevens simply argues we should "hold that the Iowa Due Process Clause requires the retroactive application of the *Rhoades* interpretation of the evidence necessary to convict an accused of criminal transmission of HIV."  Article I, section 9 of the Iowa Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law."  Our supreme court "has generally considered the federal and state due process clauses to be 'identical in scope, import[,] and purpose.'"  *Nguyen v. State*, 878 N.W.2d 744, 755 (Iowa 2016) (alteration in original) (quoting *War Eagle Vill. Apartments v. Plummer*, 775 N.W.2d 714, 719 (Iowa 2009)).  Iowa courts are free to interpret the state constitution more stringently than its federal counterpart, "providing greater protection for our citizens' constitutional rights," but this does not mean that we are required to refuse to follow decisions of the United States Supreme Court.  *Id.*

Under the federal framework, the threshold question in considering whether due process requires a judicial decision to be applied retroactively is whether the decision is substantive or procedural.  *See Goosman v. State*, 764 N.W.2d 539, 542 (Iowa 2009).  Here the parties appear to agree the *Rhoades* decision was substantive in nature.  The second question is whether the new rule of substantive law amounts to a clarification of the law or a change in the law.  *See id.* at 544. While federal due process requires that a clarification in the law "be retroactively applied to all cases, including collateral attacks where all avenues of direct appeal have been exhausted," it does not require retroactive application of a change in the law.  *Id.*  Upon our review of the decisions, and applying the law of the case, we repeat this court's prior holding that "[w]hile the *Rhoades* court did not expressly

overrule the decisions in *Keene* and *Stevens*, it was not merely 'a clarification of the law' or 'an application of preexisting law,'" but instead "was 'a change in the law' regarding the evidence the State needed to offer to meet its burden of proof to sustain a conviction for criminal transmission of HIV." *Stevens*, 2016 WL 1696909, at *3. As such, federal due process does not require retroactive application of the *Rhoades* decision. *Goosman*, 764 N.W.2d at 544.

Because the *Rhoades* case falls squarely within the class of cases for which federal courts have decided due process does not require retroactivity, we find no compelling reason to depart from the federal analysis the supreme court used in *Goosman* and subsequently applied in interpreting the state due process clause in *Nguyen*. *See Nguyen*, 828 N.W.2d at 756. To the extent Stevens provides us with an alternative framework, we find the federal framework more compelling. *See id*. We therefore hold the due process clause of the Iowa Constitution does not require the retroactive application of *Rhoades* to individuals whose direct appeals were final prior to the decision.

B. State and Federal Equal Protection

Stevens argues that prospective-only application of *Rhoades* violates equal protection guarantees. Both the federal and state constitutions provide all citizens equal protection under the law. U.S. Const. amend. XIV; Iowa Const. art. I, § 6; *Nguyen*, 878 N.W.2d at 757. Equal protection "requires that 'similarly situated persons be treated alike under the law'" and "that laws treat all those who are similarly situated *with respect to the purposes of the law alike*." *Nguyen*, 878 N.W.2d at 757 (citations omitted).

It is clearly not a violation of federal equal protection guarantees for "states to choose to apply the holding of a case prospectively rather than retroactively." *Id.*; *see also Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 177 (1990) ("When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."); *Wainwright v. Stone*, 414 U.S. 21, 24 (1973) ("A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backw[a]rd. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions." (quoting *Great N. Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932))).

As to the equal protection analysis under the Iowa Constitution, we first "determine whether there is a distinction made between similarly situated individuals." *Nguyen*, 878 N.W.2d at 758. If a party cannot make such a showing, "courts do not further consider whether their different treatment under [law] is permitted under the equal protection clause." *Id.* (quoting *Varnum v. Brien*, 763 N.W.2d 862, 882 (Iowa 2009)).

In this case, we are presented with two classes, the first containing individuals whose convictions were final before *Rhoades*, and the second including individuals whose convictions became final after the decision. The supreme court has concluded "there is a rational basis for classifying appellants in accordance with whether their claim previously has been fully considered and adjudicated." *Id.* (quoting *Everett v. Brewer*, 215 N.W.2d 244, 247 (Iowa 1974)). Further, "the distinction between direct review and collateral review applications does not violate the equal protection clause of the Iowa Constitution." *Id.* As such, as the supreme

court has done, "we decline to adopt a more restrictive standard than that of the clause's federal counterpart." *Id.* We find defendants whose convictions became final before *Rhoades* changed the state of law are not similarly situated to those convicted thereafter.

Stevens also seems to argue it violates equal protection for differing standards to apply to collateral review applicants relying on changes in the law announced by the United States Supreme Court as compared to the Iowa Supreme Court. As noted, it is clearly not a violation of federal equal protection for "states to choose to apply the holding of a case prospectively rather than retroactively." *Id.* at 757. We find no reason to hold otherwise under the Iowa Constitution. Stevens finally argues, "The absence of a consistent framework for evaluating the retroactive effect of state court decisions results in unequal treatment of collateral review applicants." Upon our de novo review, we find no merit in this contention.

We conclude Stevens was not denied equal protection of the laws under the United States or Iowa Constitutions.

C. Ineffective Assistance of PCR Counsel

Finally, Stevens argues his PCR counsel rendered ineffective assistance in failing to pursue retroactive treatment of *Rhoades* on nonconstitutional common law grounds. We review ineffective-assistance-of-counsel claims de novo. *State v. Henderson*, 908 N.W.2d 868, 874 (Iowa 2018); *see Lado v. State*, 804 N.W.2d 248, 250–51 (Iowa 2011) (noting, although PCR applicants have a statutory, as opposed to constitutional, right to counsel in PCR proceedings, the same framework applies). Stevens must establish (1) his counsel failed to perform an

essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

In arguing counsel was ineffective, Stevens requests that we "expressly adopt the federal per se framework for purposes of evaluating retroactive effect to be afforded to Iowa Supreme Court decisions." "In a trilogy of cases, the Supreme Court adopted a new, per se framework for evaluating the retroactivity of its own decisions to already-final cases." *Nguyen*, 878 N.W.2d at 753; *see Schiro v. Summerlin*, 542 U.S. 348, 351–52 (2004); *Bousley v. United States*, 523 U.S. 614, 620–21 (1998); *Teague v. Lane*, 489 U.S. 288, 310 (1989). In *Nguyen*, the applicant-appellant urged the Iowa Supreme Court to adopt and apply the federal per se framework "in determining the retroactive application of our own state supreme court cases." 878 N.W.2d at 753. *Nguyen* considered the retroactive application of *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006), but the court noted it had already "fully considered common law retroactivity in deciding *Heemstra*." *Id.* Being fully "aware of the possibility of the common law remedy," the court "determined that *Heemstra* would only apply prospectively" and "declined to adopt the per se approach." *Id.* at 754. The court adhered to that decision in *Nguyen*, indicating its acknowledgment of the importance of stare decisis for stability under the law. *See id.*

The unanimous *Nguyen* decision indicates our supreme court prefers stability under the law over providing retroactive treatment to state court decisions

under the common law. Although the supreme court has applied something similar to the federal per se approach in the past, it only did so in considering the retroactivity of United States Supreme Court decisions, not state court decisions.[5] We adhere to the *Nguyen* court's indication that it prefers stability under the law as opposed to a common law right to retroactivity of state court decisions and therefore decline Stevens's request that we adopt the federal per se approach to determine the retroactive effect of state court decisions. We reject Stevens's request that we apply the *Linkletter* practical balancing test, the predecessor to the federal per se framework, for the same reason. *See Griffith v. Kentucky*, 479 U.S. 314, 320–22 (1987) (discussing *Linkletter v. Walker*, 318 U.S. 618 (1965) and its progeny); *see also Everett v. Brewer*, 215 N.W.2d 244, 248 (1974) (declining to afford retroactive treatment to state court decision under *Linkletter* test where, among other things, a change in the law "occurred after [the appellant] had taken full advantage of his appellate rights under the law *as it then existed*." (emphasis added)).

We conclude PCR counsel did not neglect to perform an essential duty in not pursuing common law retroactivity and Stevens did not suffer prejudice.

---

[5] *See, e.g.*, *State v. Ragland*, 836 N.W.2d 107, 114–17 (Iowa 2013) (considering retroactivity of *Miller v. Alabama*, 567 U.S. 460 (2012)); *Perez v. State*, 816 N.W.2d 354, 358–59 (Iowa 2012) (considering retroactivity of *Padilla v. Kentucky*, 559 U.S. 356 (2010)); *Goosman*, 764 N.W.2d at 544–45 (indicating the per se framework applies only to federal court decisions); *Bonilla v. State*, 791 N.W.2d 697, 700–01 (2010) (considering retroactivity of *Graham v. Florida*, 560 U.S. 48 (2010)); *Morgan v. State*, 469 N.W.2d 419, 422 (Iowa 1991) (considering retroactivity of *Coy v. Iowa*, 483 U.S. 1019 (1987)); *Brewer v. State*, 444 N.W.2d 77, 80–82 (Iowa 1989) (considering retroactivity of *Duren v. Missouri*, 439 U.S. 357 (1979)).

## IV.    Conclusion

We affirm the district court's denial of Stevens's PCR application.[6]

**AFFIRMED.**

---

[6] We do not consider the arguments Stevens raises for the first time in his reply brief.  *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992).