# IN THE COURT OF APPEALS OF IOWA

No. 16-1204
Filed August 2, 2017

**TERRY T. COBBINS JR.,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Marion County, Martha L. Mertz, Judge.

Terry Cobbins Jr. appeals from the district court's denial of his application for postconviction relief. **AFFIRMED.**

Patrick W. O'Bryan of O'Bryan Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee State.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

Terry Cobbins Jr. appeals from the district court's denial of his application for postconviction relief (PCR), following his conviction for first-degree murder. He argues his trial counsel rendered ineffective assistance in failing to (1) conduct a proper pretrial investigation and (2) object to the admission Cobbins's prior theft convictions. We affirm.

## I.      Background Facts and Proceedings

The following undisputed facts were set forth in our opinion on direct appeal:

> Terry Cobbins worked at Marzetti's Frozen Pasta in Clive. His boss was Mike Miller, the production supervisor. Miller lived in Knoxville with his wife, Teresa.
> Miller also supervised Neida Pinon. Miller told Pinon he was unmarried and the two began having an affair about three months after Pinon started at Marzetti's in October 2009. Miller would often go to Pinon's home . . . in the mornings between 5:30 and 6:00. Miller bought her many gifts including a diamond and pearl ring. But when Pinon found out Miller was married, she ended the relationship. The affair rekindled when Miller showed Pinon some divorce papers, but faltered again when Pinon saw Miller with his wife, Teresa. Pinon told Miller he would have to choose between her and Teresa. Pinon left to spend Christmas vacation of 2010 in Mexico, and told Miller to take that time to think it over. When Pinon returned ten days later, Miller picked her up in Kansas City and drove her home . . . . Pinon told him if he left that night, their relationship was over. Miller left.
> According to Cobbins, it was about that same time, around Christmas of 2010, when Miller started dropping by his house unexpectedly. Miller knew where Cobbins lived because Miller sometimes gave him a ride home from work. Cobbins described Miller as "on edge" and recalled that Miller asked him to find a gun. Cobbins also said Miller requested that Cobbins "take care for some business for him."
> Cobbins told his neighbor, Tyree Lewis, that he and his boss were "pretty cool" or "tight." Cobbins also told Lewis the boss wanted his wife killed. Cobbins asked if Lewis would be willing to drive Cobbins to do the job and Cobbins would "do everything else." Cobbins asked Lewis if he could get a gun. He told Lewis

the job would be lucrative: they would split $30,000 or Lewis would get $30,000. Cobbins broached the subject with Lewis several times, most recently during December of 2010.

Cobbins also talked about his boss with Amber Lyons, his wife's cousin. In the fall of 2010, Cobbins told her he was being paid $50,000 to "do a hit on some female" in Knoxville. Cobbins told Lyons he was going to wear a trash bag over his clothes so he could "get away with it." One time when Lyons was babysitting for [Cobbins and his wife], she saw Miller stop by and duck into [Cobbins's wife]'s car. When Lyons told Cobbins, he said: "Don't worry about it, it's my boss, he's putting something in the car for me." Cobbins later told investigators Miller left him coveralls and gloves in a bag.

Cobbins twice discussed killing his boss's wife with his friend, Mario McPherson. On the first occasion in the fall of 2010, Cobbins told McPherson he had a way to make some quick money and all McPherson had to do was drive. A few weeks later, he told McPherson he needed to hurt his boss's wife in Knoxville and he would pay McPherson $1000 or $2000 to drive him to Knoxville and back. McPherson also overheard Cobbins on the phone asking where he could get a gun.

On the morning of January 7, 2011, Miller picked up Bernard Bussey, a former employee at Marzetti's, and drove to Pinon's home. Pinon was not expecting Miller. Miller told Bussey to take his car, ostensibly so Bussey could look for a temporary job. Miller knocked on Pinon's door around 6:30 a.m. to ask for a ride to work. Pinon agreed to give him a ride, but they were delayed in leaving because Miller locked Pinon's keys in her car and had to wait for a locksmith to open it.

When Miller and Bussey met later at Marzetti's, Miller told Bussey to use his car to pick up Cobbins from Iowa Lutheran Hospital, where he was recovering from an asthma attack. Cobbins suffered the attack the day before and was admitted to the hospital overnight. Cobbins checked himself out of the hospital when Bussey arrived. The two left the hospital at 8:49 a.m.

Bussey testified he drove Cobbins to a "big old house" in Knoxville, following the directions given by Cobbins. According to Bussey, Cobbins went to the door of the house and was let in. Cobbins stayed inside for five to ten minutes and then returned to the car. Bussey then drove them back to Marzetti's—estimating their arrival at between 11 a.m. and noon.

Meanwhile, Teresa's adult daughter, Shawna Mendenhall, tried to reach her mother the morning of January 7, 2011, and found it unusual she did not answer the telephone. Teresa had severe vision problems and did not have a driver's license. Worried, Mendenhall went to the Millers' Knoxville home just after

10:30 a.m. and found the door uncharacteristically unlocked. Her mother was dead on the kitchen floor, shot once in the head.

An analysis of cell phone records confirmed Cobbins and Bussey arrived in the Knoxville area at the approximate time of Teresa's death. Signals from various cell towers indicated Cobbins's phone was moving from Des Moines to Knoxville between 9:01 a.m. and 10:37 a.m. Then after 10:41 a.m., the cell phone moved back through Pleasantville and toward Des Moines. The cell records revealed a number of calls between Cobbins's cell phone and Miller's cell phone or the phone at Marzetti's.

When Bussey and Cobbins returned from Knoxville, Miller accompanied them to the airport and paid for a rental car for Cobbins. The manager at the Enterprise Rent-A-Car thought Miller and Cobbins seemed "quite antsy and nervous throughout the transaction," which was completed just after noon. Cobbins drove the rented Chevy Suburban to Milwaukee, Wisconsin.

On January 8, 2011, the morning after the murder, Miller went to Pinon's house to express his love for her. Pinon told Miller about her son finding bullets in the parking spot where her car had been parked when Miller locked the keys inside the day before. Pinon had placed the bullets into a tequila glass on a kitchen shelf. Although Miller denied the bullets belonged to him, he put them in a bag and left with them.

On January 10, 2011, Cobbins started his trip back from Milwaukee, but after receiving a call from his son's mother that there was a warrant out for his arrest in Iowa, he turned around. He was taken into custody by the Wisconsin Division of Criminal Investigation as a material witness. The Wisconsin agents interviewed Cobbins on January 10 and 11. The Wisconsin agents knew Iowa law enforcement searched Cobbins's house and found a MapQuest printout with directions from Marzetti's in Clive to the Millers' house in Knoxville. The map had been printed out on December 8, 2010.

In the interviews Cobbins repeatedly denied going to Knoxville. Cobbins initially said he wasn't sure if Miller was married, but acknowledged "there may be somebody on the side." Cobbins eventually described a situation where Miller "wanted someone handled" in exchange for money. Cobbins said Miller asked him to do it or to find him a gun. Cobbins also admitted Miller brought coveralls to his house to be used in the murder. Cobbins said he carried his cell phone with him on January 7.

The Wisconsin agents, who made audio-recordings of the interviews, explained that at a couple of points, Cobbins became visibly shaken. Cobbins began sweating profusely when asked about turning around and heading back to Milwaukee after learning Iowa authorities issued a warrant for his arrest. He also uttered

> "no, no, no" in a low voice with his head in his hands when asked a question about Mike, coveralls, and large amounts of money.
> Following the investigation, on March 25, 2011, the Marion County Attorney charged Cobbins with first-degree murder in the death of Teresa Miller. The case went to trial on February 21, 2012, and the jury returned a guilty verdict on March 1, 2012. The court sentenced Cobbins to life in prison.

*State v. Cobbins*, No. 12-0857, 2013 WL 6405461, at *1–3 (Iowa Ct. App. Dec. 5, 2013).

Cobbins appealed, claiming there was insufficient evidence to support his conviction and his trial counsel had provided ineffective assistance by failing to (1) "allege the lack of corroboration for the accomplice testimony when moving for judgment of acquittal"; (2) "request a jury instruction requiring corroboration of accomplice testimony"; and (3) "object to the impeachment of Cobbins by his prior theft convictions." *Id.* at *5–6. Our court affirmed Cobbins's conviction, finding the jury's verdict was supported by "[a] wealth of circumstantial evidence link[ing] Cobbins to the murder plot." *Id.* at *5. Our court further found there was "abundant evidence in the record to corroborate [the alleged accomplice]'s testimony," and thus, trial counsel was not ineffective in failing to move for judgment of acquittal or request a jury instruction on that basis. *Id.* at *7. We preserved for postconviction proceedings the issue of whether Cobbins's trial counsel should have objected to the admission of Cobbins's prior theft convictions, stating "[o]ur record does not show what kind of theft Cobbins committed" but "reasonable defense attorneys would have considered the issue 'worth raising' for some prior theft convictions." *Id.* at *8. Finally, our court determined that although Cobbins's prior absence-from-custody conviction was not admissible under Iowa Rule of Evidence 5.609(a)(2) because it did not

involve a crime of dishonesty, the district court's admission of the prior conviction was harmless given the overwhelming evidence of Cobbins's guilt. *Id.* at *9.

Cobbins filed a pro se application for PCR. PCR counsel for Cobbins subsequently amended the application, alleging numerous claims of ineffective assistance of trial and appellate counsel, which the district court denied. Cobbins appeals.

## II.     Scope and Standard of Review

We generally review PCR proceedings for correction of errors at law. *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). However, when an applicant raises constitutional claims, such as claims of ineffective assistance of counsel, we apply a de novo review. *See id.*; *Bonilla v. State*, 791 N.W.2d 697, 699 (Iowa 2010).

## III.     Analysis

"Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules." *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010). To succeed on a claim of ineffective assistance of counsel, Cobbins must show "by a preponderance of the evidence: '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015) (quoting *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012)); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to prove either prong is fatal to the claim. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010). In examining Cobbins's claims, we presume trial counsel performed their duties competently. *See Thorndike*, 860 N.W.2d at 320.

### A.   Trial Counsels' Pretrial Investigation

On appeal, Cobbins argues his trial counsel rendered ineffective assistance in failing to conduct a proper pretrial investigation.  He complains there is no record of what the public defender's office investigator did in this case to prepare for trial.  He baldly asserts trial counsel should have more thoroughly investigated the State's witnesses Lewis, Lyons, and McPherson, which would have revealed that the witnesses were known liars and could have been impeached or could have served as the basis for suppressing the evidence obtained pursuant to the search warrant that ultimately would have led to a different result at trial.  He further asserts trial counsel failed to investigate whether Bussey had received any money in payment for the murder, which may have proved Bussey had committed the crime instead of Cobbins.  Cobbins claims the cumulative effect of all of these alleged failures resulted in prejudice to him.

"When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (citation omitted).  Cobbins does not suggest who would have provided any of this information to trial counsel or otherwise state how counsel could have discovered this information outside of Cobbins's bare accusations.  Further, Cobbins has not shown how use of such evidence at trial would have resulted in a different outcome.  *See id.* ("The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome."); *see also Strickland*, 466 U.S. at 694 ("The defendant

must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

Moreover, we find the record contains overwhelming evidence of Cobbins's guilt. *See Boose v. State*, No. 13-1130, 2014 WL 7343218, at *3 (Iowa Ct. App. Dec. 24, 2014) (applying the "overwhelming evidence" standard cited in *State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008), to the applicant's ineffective-assistance-of-trial-counsel claim in a PCR action). The State presented evidence Cobbins and Miller knew each other well. Cobbins told several people about his and Miller's plan to kill Miller's wife, Teresa. He offered money to people if they agreed to drive him to the victim's home or help him obtain a gun. While searching Cobbins's house, police found directions to the victim's home that had been printed less than a month before the murder. Cell phone records showed Cobbins was at the victim's home at the time of the murder, and Cobbins admitted he had his phone with him that day and that he rode with Bussey to the victim's home. Cell phone records also showed Cobbins was in contact with Miller during that time. After Bussey and Cobbins returned from the victim's home, Miller drove Cobbins to a rental car service and paid for the rental car that Cobbins drove out of state. Cobbins was returning to Iowa when he learned there was a warrant out for his arrest and turned around. Additionally, Cobbins made numerous inconsistent statements to law enforcement about his involvement with Miller and the murder plot.

Based on the record before us, we find Cobbins has not shown he was prejudiced by trial counsels' alleged failure to conduct a proper pretrial investigation. Therefore, we conclude trial counsel did not render ineffective

assistance with regard to this claim.  *See State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006).

### B.    Prior Theft Convictions

Cobbins next asserts his trial counsel provided ineffective assistance in failing to object to the admission of his prior theft convictions.  On direct appeal, we preserved the issue for PCR proceedings to discover the underlying facts of the prior theft convictions and determine whether counsel had breached an essential duty by not objecting.

At the PCR hearing, Cobbins presented evidence of the underlying facts of his prior theft convictions.  He testified he was convicted of fourth-degree theft in 2006 for loading several bottles of liquor into a cart, covering the bottles with bags, and attempting to push the cart out of the store.  He testified he was convicted of fifth-degree theft in 2010 for taking a cab ride and then getting out of the car and running away when he got to his destination because he did not have enough money to pay the fare.

The Iowa Supreme Court raised the question of whether all crimes of theft and burglary per se involve dishonesty and are thus admissible under rule 5.609(a)(2) in a footnote in *State v. Harrington*, 800 N.W.2d 46, 51 n.4 (Iowa 2011).  We have addressed this issue many times in the intervening six years. *See Cobbins*, 2013 WL 6405461, at *8; *see also State v. Reed*, 2017 WL 104939, at *4 (Iowa Ct. App. Jan. 11, 2017) (noting that "the footnote . . . the *Harrington* court attached to its 'settled law' statement . . . motivate[d the defendant]'s ineffective-assistance claim"); *State v. Denney*, No. 15-0318, 2016 WL 3269556, at *4 (Iowa Ct. App. June 15, 2016) (recognizing the question left

unanswered in *Harrington* but ultimately concluding the defendant suffered no prejudice as a result of the admission of the prior theft convictions); *State v. O'Neal*, No. 11-0915, 2012 WL 4513809, at *5 (Iowa Ct. App. Oct. 3, 2012) (noting that the issue raised in the *Harrington* footnote had been properly argued, but "we d[id] not believe that we, as an intermediate appellate court, [we]re at liberty to overturn longstanding precedent from the Iowa Supreme Court consistently recognizing theft as a crime that per se involves dishonesty").  At the time of Cobbins's trial in 2012, and presently, our case law held that all convictions for theft and burglary are crimes of dishonesty admissible under rule 5.609(a)(2) for impeachment purposes.  *See, e.g.*, *Harrington*, 800 N.W.2d at 51.  "We are not at liberty to overturn Iowa Supreme Court precedent."  *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990); *see State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.").

Nevertheless, even if we assumed Cobbins's trial counsel breached an essential duty in not raising the issue, Cobbins has not shown he was prejudiced by any such alleged failure.  The district court held Cobbins had failed to show objections to his prior theft convictions by trial counsel would have changed the outcome of this case because the convictions were for misdemeanor offenses and dissimilar to the first-degree-murder charge Cobbins was facing here.  We agree with the district court's conclusion.  *See State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008) (finding that the risk of prejudicial impact of impeachment by prior convictions is greater "when the prior convictions are for crimes that are similar to the crime for which the defendant is on trial").  Furthermore, as noted

above, we find the record contains clear overwhelming evidence of Cobbins's guilt. *See Boose*, 2014 WL 7343218, at *3. Therefore, we conclude Cobbins has failed to prove a reasonable probability that, without any alleged errors by trial counsel, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. And he cannot show he was prejudiced by any alleged failure of his trial counsel. *See id.*; *see also Shanahan*, 712 N.W.2d at 142.

Accordingly, we affirm the district court's denial of Cobbins's PCR application.

**AFFIRMED.**