STATE of Iowa, Appellee,

v.

Luis Alejandro VICTOR, Appellant.

No. 65288.

Supreme Court of Iowa.

Sept. 23, 1981.

Rehearing Denied Oct. 15, 1981.

Francis J. Lange of Kaufman, Lange & Hodge, Dubuque, for appellant.

Thomas J. Miller, Atty. Gen., and Teresa Baustian, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and LeGRAND, HARRIS, McCORMICK, and ALLBEE, JJ.

HARRIS, Justice.

Sentence was imposed following defendant's plea of guilty to willful injury, a class "C" felony under section 708.4, The Code 1981. In this appeal defendant challenges the guilty plea proceeding, asserting the trial court failed to comply with Iowa R.Crim.P. 8(2)(b). He also asserts he was improperly sentenced and was denied effective assistance of counsel. We affirm the trial court.

Defendant, a native of Panama and a naturalized United States citizen, has lived in this country for about 12 years. At the time of sentence he was a member of the armed forces, having served in the United States army for seven years. During a domestic quarrel in Dubuque he attacked and stabbed his paramour with a screwdriver. Police officers had to pull defendant from his paramour, subdue, and disarm him.

Defendant was originally charged with attempt to commit murder. § 707.11, The Code. That charge was dismissed as a part of the plea bargain which resulted in defendant's guilty plea to the lesser charge.

I. Defendant contends that in two respects the trial court failed to take his plea in compliance with Iowa R.Crim.P. 8(2)(b). He argues the trial court failed to determine whether the plea was made voluntarily, knowingly, and intelligently. He also contends the trial court failed to adequately determine the factual basis for the plea.

Citing *State v. Fluhr*, 287 N.W.2d 857, 863 (Iowa 1980), defendant says the trial court failed to explain the charge adequately, especially in light of defendant's difficulty with the English language, his limited intelligence, and the complexity of the charge. The trial court was sensitive to the fact that English was not defendant's native language. After learning that defendant's education in Panama included a year of college the trial court addressed defendant as follows:

THE COURT: ... Now, you speak with a slight accent. Do you have any difficulty in understanding me?

DEFENDANT: A little bit.

THE COURT: Am I talking too fast?

DEFENDANT: No, Sir.

THE COURT: I don't want you to say, yes, or, no, to anything I say just because you think that's what you are supposed to say. If you don't understand me, say you don't understand. Will you do that?

DEFENDANT: Yes, Sir.

THE COURT: Now, was there anything I have said previously that you didn't understand what I was talking about?

DEFENDANT: I can understand, yes.

THE COURT: Do you understand that you are entitled to a speedy and public

trial by a jury at which you would be entitled to be represented by Mr. Bartmann at public expense? You wouldn't be required to testify but you could stand on your right against self-incrimination and no one could comment on your failure to testify or draw any inferences therefrom. By that, I mean, the county attorney couldn't stand up and say to the jury, well, if he wasn't guilty, why didn't he go up and say he wasn't guilty. He was sitting here all the time. He could have testified. The county attorney can't say that. The fact that you don't testify is nobody's business but your own. Do you understand that?

DEFENDANT: Yes, Sir.

THE COURT: You would be entitled to confront and cross-examine the witnesses against you that appeared to testify against you. Mr. Bartmann would have the right to cross-examine them. You would have the right of subpoena or other process to call witnesses who you felt would testify favorably to your side of the case, and at that trial you would be presumed innocent unless the State proved by competent evidence beyond a reasonable doubt each one of the essential elements of the charge against you. Do you understand that?

DEFENDANT: Yes, Sir.

THE COURT: Do you understand that when you plead guilty there won't be any jury trial and the court will just proceed to judgment?

DEFENDANT: I do, Sir.

THE COURT: Have you read the minutes that were attached to the information, the summary of what each witness would say?

DEFENDANT: I read it, Sir.

THE COURT: And if those witnesses came and said that, would they be telling the truth? Do you understand what I'm saying? If you don't understand, say, I don't know what you are talking about. You tell me what you think I asked you.

DEFENDANT: I don't know.

THE COURT: Did you read that paper there that Mr. Bartmann has got?

DEFENDANT: Yes, Sir.

THE COURT: That's called the minutes. That's a summary of what each person would say if he came here and testified. If those people came here and testified under oath at a trial and said the things that they say in that paper, would they be telling the truth?

DEFENDANT: Some of the things that they would be saying is kind of awkward, Sir.

THE COURT: Then, you tell me what you did to make you think that you are guilty of anything.

DEFENDANT: Sir, the time of the incident I was drinking, you know, like—

THE COURT: What was the incident? What happened?

DEFENDANT: I don't know what was happening because I was drinking so much of that liquor that I was all messed up, and I was angry and everything seemed so confused to me. And I don't really remember what happened completely. But, I try my best to deal with the situation, but it seems that I couldn't deal with it due to the fact I was drinking.

THE COURT: Did you tell Mr. Bartmann about the fact that you were all mixed up at the time? Did you tell Mr. Bartmann that? Do you know what I'm saying?

DEFENDANT: Yes, Sir.

THE COURT: Did you tell Mr. Bartmann?

DEFENDANT: Yes, Sir.

THE COURT: That you had been drinking; that you couldn't remember what happened?

DEFENDANT: Right, Sir.

THE COURT: And did he tell you that he felt it was in your best interests to accept the deal offered by the county attorney anyhow? Do you understand what I mean by that? Did he say he thought it was the best thing for you to do was go ahead and plead guilty if they would just charge you with willful injury?

DEFENDANT: Yes, Sir.

THE COURT: And were you satisfied with that advice? Do you think this is the best thing for you to do?

DEFENDANT: I think it is the best thing for me to do, Sir.

The trial court relied extensively on defense counsel's statements when explaining the elements of the offense. The following occurred:

THE COURT: And have you explained to the defendant the essentials of the offense with which he is charged?

MR. BARTMANN [Defendant's Counsel]: I have, Your Honor.

THE COURT: And do you believe he understands them?

MR. BARTMANN: I certainly do.

THE COURT: And does he further understand his right to remain silent, he doesn't have to plead at this time if he doesn't want to?

MR. BARTMANN: Yes. I explained that to him as well as the other rights prior to arriving here today.

THE COURT: Luis A. Victor, your attorney has on your behalf entered a plea of guilty to the charge that you did commit the crime of willful injury contrary to section 708.4 of the Code in that you did, on December 30, 1979, without justification, stab Nancy Nauman with the intent, and causing serious injury to her person. Is this your plea?

DEFENDANT: Yes, Sir.

THE COURT: Did Mr. Bartmann tell you what the maximum penalty attached to this offense is?

DEFENDANT: Yes, Your Honor.

THE COURT: What did he say it was?

DEFENDANT: It was ten years, Sir.

THE COURT: And did he say whether there was any minimum sentence? Did he advise you that if you have been convicted of a previous forcible felony that you are not eligible for parole till you have served one half the maximum sentence? Did he tell you that?

DEFENDANT: Yes, Sir.

THE COURT: Has anyone made any threats or promises or negotiations to obtain this guilty plea other than what Mr. Bartmann·told me about here just now, just that that other charge is going to be dismissed? Do you understand what I'm saying? Did anybody make threats or promises to get you to plead guilty other than what Mr. Bartmann told me that if you plead guilty the county attorney said he would dismiss the other charge?

DEFENDANT: No, Sir.

THE COURT: Did anybody else say, you better plea guilty, or you'll really get it, or promise you something that if you plead guilty—

DEFENDANT: No, Sir.

■ We said in *Brainard v. State*, 222 N.W.2d 711, 714 (Iowa 1974), that the extent of the court's explanation necessary to assure a defendant's understanding depends on the circumstances of each case. This includes among other things the complexity of the charge and the accused's education and experience. In addition, the name given the offense may be sufficiently descriptive of its nature to obviate further explanation.

■ Lack of explanation of the elements of an offense is not reversible error if, under all the circumstances, it is apparent the accused understood the charge. *State v. Hansen*, 221 N.W.2d 274, 276 (Iowa 1974). We think the elements of the charge here were not complex and believe the nature of the offense was fairly apparent from its name. Under the totality of the circumstances, including counsel's assurances that he had explained the charge to his client, we find that defendant sufficiently understood the nature of the offense.

Contrary to defendant's contention it plainly appears from the proceedings quoted above that the trial court fully complied with rule 8(2)(b) in its requirement that defendant understand the penal consequences of his plea.

■ II. Defendant also believes there was no showing of a factual basis for the plea. This of course is another demand of Iowa R.Crim.P. 8(2)(b). We have said that

a factual basis can be established by "(1) inquiry of the defendant; (2) inquiry of the prosecutor; (3) examination of the presentence report; or (4) reference to the minutes of testimony." *State v. Johnson*, 234 N.W.2d 878, 879 (Iowa 1975).

■ The minutes of testimony attached to the trial information were more than sufficient to establish a factual basis. According to the minutes of Joyce J. Hart, defendant threatened his paramour prior to the attack. The witness saw defendant on top of his paramour and observed his hand going up and down, appearing to punch her. The witness then observed the police come in response to her own call and pull defendant out of the car and off his paramour. Then she saw blood on defendant's paramour and heard defendant say, "I didn't stab her, man. She stabbed me." Thereafter there was a continuing struggle between police and defendant. Other minutes include testimony of two police officers to the same effect, also the testimony of a doctor describing multiple puncture wounds of the victim. Several other witnesses corroborate the details of the offense.

Defendant's claim that no factual basis was shown is wholly without merit.

III. There are three facets to defendant's challenge to the trial court's imposition of sentence. Defendant first complains of the trial court's failure to mention the sentencing section of the Code and the reasons for use of that particular section. Second, defendant believes the trial court failed to consider all relevant information. Finally, defendant says the trial court failed to relate the sentence to the goals set out in the Code. The second and third facets amount to an assertion that the trial court abused its sentencing discretion. In order to review that claim of abuse "we must first know the trial court's reason for imposing the . . . sentence." *State v. Marti*, 290 N.W.2d 570, 589 (Iowa 1980).

■ Both Iowa R.Crim.P. 22(3)(d) and section 901.6, The Code, require the trial court to indicate the section under which sentence is imposed. In *State v. Dawson*, 245 Iowa 747, 749, 63 N.W.2d 917, 918 (1954), we said that a similar provision, a precursor to rule 22(3)(d), was directory only and that noncompliance did not result in prejudice to the defendant. Hence, noncompliance was not reversible error. We think noncompliance with rule 22(3)(d) is the same. Here there was no prejudice to defendant. This assignment is without merit.

Rule 22(3)(d) also requires the trial court to state reasons for a particular sentence. This requirement is more than directory. *State v. Worley*, 297 N.W.2d 368, 372 (Iowa 1980), and authorities there cited.

■ The trial court here was certainly terse and succinct in stating reasons for the sentence it selected. Rejecting a request that a fine, rather than incarceration, be imposed the trial court said, "I accept and buy your analysis of the law that fine is available to me, but in view of the, as I say, the nature and seriousness of the offense, I feel a fine would be inappropriate." Upon imposition of sentence the court stated: "After receiving and examining all pertinent information, the court has considered the sentencing options of fine, confinement as authorized by law and has decided to confine the defendant, in part, because of: nature of the offense."

The brevity of the court's statement of reasons here does handicap our review of the sentencing discretion. And it probably would have been more meaningful to the defendant if the trial court had repeated from the minutes of testimony some description of the brutal violence of the crime and the serious effect it had on the victim and also on the public. Yet, it is clear from the trial court's statement exactly what motivated and prompted the sentence. We find that the requirement to state reasons for the sentence was satisfied.

■ We cannot say that the sentence imposed was, under the circumstances, an abuse of discretion. We interfere in a claim that an authorized sentence was too severe only upon a showing of abuse of discretion. *State v. Grimme*, 274 N.W.2d 331, 338 (Iowa

1979). The statutory sentencing objectives include rehabilitation for the defendant and the protection of the community from further offenses by the defendant and others. § 901.5, The Code 1981. We are struck, as was the trial court, by the violent and vicious nature of the attack, and the fact that police officers were required to rescue the victim.

IV. Finally, defendant argues he was denied effective assistance of counsel. Again there are many facets to this assignment. We have many times said that such claims ordinarily should be presented by way of application for postconviction relief. This allows for a full record, including explanations for counsel's conduct. *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978). Under that principle we decline at this time to consider defendant's claim of ineffective assistance of counsel.

As all of defendant's assignments are without merit the judgment of the trial court is affirmed.

AFFIRMED.