# IN THE COURT OF APPEALS OF IOWA

No. 19-1520
Filed January 21, 2021

**ANDREW FAULKNER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Butler County, James M. Drew, Judge.

Andrew Faulkner appeals the denial of his application for postconviction relief. **AFFIRMED.**

Mark C. Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

Andrew Faulkner appeals the denial of his application for postconviction relief (PCR), claiming his *Alford* guilty pleas[1] to two counts of third-degree sexual abuse were not entered knowingly and voluntarily because of the ineffective assistance of plea counsel.

**Factual Background and Procedural History.**

In January 2017, Faulkner was charged with four counts of third-degree sexual abuse, a class "C" non-forcible felony in violation of Iowa Code section 709.4(1)(b)(3)(d) (2017).[2] [3]  The charges stemmed from allegations that Faulkner sexually abused his girlfriend's underage daughter, E.D., over a period of two years.

In July 2017, Faulkner entered *Alford* guilty pleas to two counts of sexual abuse in the third degree.  The plea agreement provided Faulkner would plead

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970); *State v. Knight*, 701 N.W.2d 83, 85 (Iowa 2005) ("Under this procedure, 'the defendant acknowledges the evidence strongly negates the defendant's claim of innocence and enters [a guilty] plea to avoid a harsher sentence.'" (citation omitted)).

[2] Iowa Code section 709.4(1)(b)(3)(d) provides:

> 1. A person commits sexual abuse in the third degree when the person performs a sex act under any of the following circumstances:
>
> . . . .
>
> b. The act is between persons . . . not . . . cohabitating as husband and wife . . .
>
> . . . .
>
> (3) [where] [one] person is fourteen or fifteen years of age and . . .
>
> . . . .
>
> (d) The person is four or more years older than the other person.

[3] It is unclear exactly what year these criminal acts took place.  The trial information alleged Faulkner committed these crimes between 2015 and 2017.  The pertinent Iowa Code section was not amended during that time; we choose to reference the 2017 Code.

guilty to two counts of third-degree sexual abuse and the State would dismiss the other two counts of third-degree sexual abuse. Faulkner would consent to a sentence of ten years on each count to run consecutively, but after ninety days in prison the court would reconsider Faulkner's sentences with the benefit of a review of a later prepared presentence investigation report and prison progress report. Faulkner requested immediate sentencing, and the court entered judgment and sentenced him to two indeterminate sentences not to exceed ten years.[4] After an unreported hearing on reconsideration, the court reaffirmed Faulkner's judgments and sentences in November 2017. Faulkner appealed the court's denial of his motion for reconsideration. The Iowa Supreme Court dismissed the attempted appeal, finding no right to appeal the denial of reconsideration, recast it as a petition for writ of certiorari, then denied the petition.

In September 2018, Faulkner applied for PCR pro se claiming ineffective assistance of counsel. Faulkner alleged plea counsel failed to adequately investigate E.D.'s inconsistent statements and failed to obtain cell phone tower records.[5] Faulkner also asserted his plea deal was not explained in terms he could understand, he was not given prescribed medications while in custody prior to entry of the plea,[6] he was pressured to accept the plea, and he was innocent and

---

[4] Faulkner's sentence also included a special sentence of life-time parole, suspended fines, a sex-abuse surcharge, a $250 civil penalty, possible victim restitution, and required Faulkner to register as a sex offender.

[5] Faulkner did not explain how cell phone tower records were relevant during the PCR trial. So we do not consider this allegation.

[6] Faulkner testified at the PCR trial that he takes a medication for attention deficit disorder and seizures. Faulkner acknowledges that no expert testimony was presented to discuss the effects of the medication and how the medications could have affected his ability to understand the plea proceedings.

wished to go to trial. A PCR trial was held in August 2019, and the PCR court entered an order denying relief on all claims in September.

Now on appeal, Faulkner asserts his pleas were not entered knowingly and voluntarily because of ineffective assistance of plea counsel. Faulkner also points to the failure of the court to comply with Iowa Rule of Criminal Procedure 2.8(2)(b)(1) to alert him to the nature and elements of the charges against him. As to the specifics of his involuntary plea claim, Faulkner asserts plea counsel (1) told him to "take the ninety days in prison prior to his sentence being reconsidered and then move on with his life"[7] and should have advised Faulkner it was unlikely his sentences would be changed absent some assurance the State would support reconsideration at the hearing; (2) never told him he could not appeal an adverse ruling at the reconsideration hearing; and (3) misinformed him of the consequences of rejecting the State's plea offer and instead proceeding to trial.[8] Faulkner urges but for counsel's failure to accurately inform him, he would not have pled guilty and would have gone to trial.

**Standard of Review.**

"Generally, an appeal from a denial of an application for postconviction relief is reviewed for correction of errors at law." *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016) (citation omitted). However, because ineffective-assistance-of-

---

[7] During the plea proceedings, the court asked Faulkner "Do you understand that the [ninety] days is not a promise that you'll be out? It's just the opportunity that you might be out." Faulkner responded, "Yeah."

[8] The State maintained it would amend all four sexual abuse charges to forcible felonies under Iowa Code sections 709.4(1)(b)(3)(a) and 702.11(1) if Faulkner took the case to trial. Trial counsel advised Faulkner to accept the offer because he faced a potential forty-year sentence if convicted at trial under the amended charges.

counsel claims are based on the constitutional guarantees of the effective assistance of counsel found in the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution, such claims are reviewed de novo. *Id.* Faulkner also claims his guilty pleas were not made knowingly and intelligently. Because this claim implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, our review is de novo. *State v. Loye*, 670 N.W.2d 141, 150 (Iowa 2003).

**Analysis.**

The PCR court described Faulkner's PCR action as "buyer's remorse." In an attempt to reject the plea agreement, through an ineffective-assistance-of-counsel rubric, Faulkner raises several failures associated with plea counsel's performance that lead to him pleading guilty. "[T]o succeed on a claim of ineffective assistance of counsel, [an applicant] must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show prejudice, "the applicant must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Ledzema v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 698. "'We begin with the presumption that the attorney performed competently' and 'avoid second-guessing and hindsight.'" *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011) (citation omitted). If the applicant fails to prove either

element by a preponderance of the evidence, the claim fails and we need not address both elements.  *Ledzema*, 626 N.W.2d at 142.

**Failure to Perform an Essential Duty.**

Faulkner broadly argues his guilty pleas were not entered knowingly and voluntarily "because he was not properly advised by counsel as [to] the actual risks and rewards associated with the decision to plea or go to trial."  First, Faulkner contends that plea counsel cajoled him into believing he would likely spend no more than ninety-days in prison and then be released on probation.  At the PCR trial, Faulkner testified plea counsel never told him his chances of the court reconsidering his sentences were "slim to none" and instead advised Faulkner "to do the [ninety] days and move on with his life."  Plea counsel was not asked to confirm or deny making this statement at the PCR trial.  Even so, the record shows the plea court carefully explained there was no guarantee Faulkner would be released on probation following the hearing:

> Q. Have there been any promises made to you other than the plea agreement that convince you to plead guilty?
> A. No.
> Q. Have there been any threats made to you to persuade you to plead guilty?
> A. No.
> Q. What I'm specifically concerned with in regard to the promises question, because you're looking at me like you don't understand that, is to make sure that you don't think that everybody says you're getting out in [ninety] days.  What we're telling you is that we will consider it again in [ninety] days.  Do you understand that?
> A. Yes.

Then Faulker confirmed his understanding by responding to the court's questions:

> Q. Do you understand that the [ninety] days is not a promise that you'll be out?  It's just the opportunity that you might be out.
> A. Yeah.

Faulkner also offered no support, other than his own testimony, that demonstrates plea counsel led him to believe he would be released following the reconsideration hearing. Likewise, Faulkner's complaint that plea counsel should have advised it was unlikely his sentences would be changed absent some assurance the State would support reconsideration lacks support in the record. We have no information revealing what plea counsel told Faulkner about his odds of receiving a favorable reconsideration ruling. And nothing in the record reflects whether the State opposed reconsideration.

Next, Faulkner asserts plea counsel was deficient by not informing him there was no right to appeal an adverse ruling from the reconsideration hearing. This was not raised at the PCR proceeding, and the PCR court did not rule on this particular assertion. Plea counsel tried to appeal the district court's ruling following the hearing, which suggests he was likely unaware the ruling was not appealable. We do know the plea court ensured Faulkner understood there was no guarantee the reconsideration hearing would end up in his favor, in which case he faced up to twenty years in prison. The plea court characterized the hearing as no more than an "opportunity" to have the sentences reconsidered, an opportunity Faulkner accepted as part of his plea rather than taking his chances at trial. Faulkner urges that if he had known he could not appeal the reconsideration hearing, he would not have pled guilty. Because Faulkner did not argue this point at the PCR trial, this theory is waived. *See, e.g.*, *33 Carpenters Constr., Inc. v. State Farm Life & Cas. Co.*, 939 N.W.2d 69, 76 (Iowa 2020) ("We are a court of *review*, and we do not generally decide an issue that the district court did not decide first.").

Faulkner's broader assertion is that plea counsel failed to adequately explain the State's plea offer to aid his understanding of the risks and the rewards of accepting the offer versus going to trial. The plea hearing lasted over one and one-half hours, and the plea court allowed eight different breaks for counsel and Faulkner to confer. The plea court patiently handled the colloquy and asked Faulkner "Are you willing to have a conviction entered on Counts 1 and 2?" He responded "yes" after conferring with trial counsel. Then the plea court engaged in the following exchange with Faulker:

> Q. And that would include the minutes of testimony, which included some police reports and some other reports as well. Do you remember all that paperwork?
> A. I don't remember all of it, no.
> Q. And you don't have to remember . . . all the details, but do you remember that you read it and went over it with [trial counsel]?
> A. Yeah.
> Q. Okay. Would you agree with me that if that were the evidence that were presented at trial, a jury may well find you guilty of those two counts?
> A. Yeah.
> Q. Okay. And you're looking at me like you don't quite understand so let me just rephrase.
> A. Because I don't agree with you, I guess.
> Q. Well, if the State presents that evidence, do you think that a jury might find you guilty?
> A. I honestly don't know. I understand what you're saying. I just don't know, and I don't want to take the risk is why I'm agreeing what we're agreeing on today.

Recognizing Faulkner's apparent confusion, the court took a brief recess to allow Faulkner to confer with trial counsel. The court continued:

> Q. Okay. . . . So I'm guessing that [plea counsel] and Mr. Faulkner have had the chance to converse about the *Alford* plea a little bit?
> A. Yeah.
> Q. And, Mr. Faulkner, I'm certainly not going to force you to say anything because I need to make sure you're doing this voluntarily and without any pressure, other than the inherent

pressure of having charges against you. So I'm not trying to make you say something. I'm just trying to make sure that my record is good about what we're doing; okay?

A. Uh-huh.

Q. So we're talking about risk. And obviously everybody who goes to trial with whatever they might be charged with is taking some risk that a jury would find them guilty. Does that make sense?

A. Yeah.

Q. And so if you decided to go to trial, you would take some risk that the jury would find you guilty, but some people feel pretty good about their chances and some people would say this is a really bad case against me and this jury is going to find me guilty. And I don't know where you're at in regard to that. Do you feel like you're taking a real risk if you go to trial?

After conferring with plea counsel off the record, Faulkner agreed he thought it was "pretty likely" he would be found guilty if he went to trial. Faulkner also conveyed he understood the State would amend all four sexual abuse charges to forcible felonies were he to go to trial, presenting even greater risk.

Faulkner's final challenge to the plea proceedings relates to the plea colloquy and plea counsel's alleged failure to ensure he understood the nature and elements of the charges to which the plea was offered. He claims the plea court failed to comply with Iowa Rule of Criminal Procedure 2.8(2)(b)(1)[9] because there was no discussion of what constitutes third-degree sexual abuse. The State responds by arguing "the name of the offenses and the simplicity of the elements were sufficiently descriptive to obviate the need for further explanation." We also

---

[9] This rule states:

> The court . . . shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands the . . . [t]he nature of the charge to which the plea is offered.

Iowa R. Crim. P. 2.8(2)(b)(1).

note that Faulkner told the court he reviewed the minutes of testimony with plea counsel and agreed the minutes supplied evidence sufficient to support his guilty plea.

"[W]e apply a substantial compliance standard in assessing whether the trial court has adequately informed the defendant of the items listed in the rule." *Loye*, 670 N.W.2d at 151. "'Substantial compliance' requires at a minimum that the defendant be informed of these matters and understand them." *Id.* (citation omitted). "In applying this standard to the requirement that the defendant know and understand the nature of the charges against him, we have held the court need not review and explain each element of the crime *if* it is 'apparent in the circumstances the defendant understood the nature of the charge.'" *Id.* (quoting *State v. Smith*, 300 N.W.2d 90, 91 (Iowa 1981)).

"The extent of the court's explanation varies with the circumstances of each case. In determining how much explanation is necessary, we consider the complexity of the charge as well as the defendant's education and experience." *State v. Sanders*, No. 16-1281, 2017 WL 4570432, at *2 (Iowa Ct. App. Oct. 11, 2017) (citation omitted). "In addition, the name given the offense may be sufficiently descriptive of its nature to obviate further explanation." *State v. Victor*, 310 N.W.2d 201, 204 (Iowa 1981). "The question is whether the record as a whole shows the defendant understood the elements of the crime and the nature of the charge." *Sanders*, 2017 WL 4570432 at *2.

This record shows the court asked Faulkner multiple times whether he read the trial information, discussed it with trial counsel, and made clear it was relying on the trial information in accepting Faulkner's plea. For instance:

Q. May I rely on the minutes of testimony as part of your plea so that I can make a consideration about whether I think it's in your benefit to enter the *Alford* plea?

A. Say that again.

Q. To accept an *Alford* plea, I also have to agree that it's in your benefit to take the deal—

A. Okay.

Q. —Basically. How I do that, I have to kind of analyze what evidence would be presented if it went to trial. And the only way . . . to know . . . is to review the minutes of testimony. Does that make sense to you?

A. Yes.

Q. May I review the minutes of testimony for that purpose?

A. Sure. Go ahead.

Q. And rely on them. Okay. I won't do that here. I've reviewed them already. I generally know what they are.

A. Oh, okay.

Q: But I just needed you to acknowledge for our record that you knew I was doing that and that it was fine with you that I do that.

A. Okay.

In relying on Faulkner's understanding of the trial information, the court never detailed the elements of third-degree sexual abuse or otherwise ensured Faulkner understood "the nature of the charge." Thus, the question we must answer is whether it is apparent in the circumstances that Faulkner understood the nature of third-degree sexual abuse. *See Smith*, 300 N.W.2d at 91.

Here Faulkner did not admit his guilt in the plea colloquies but knew he was accused of sexually abusing E.D. If plea counsel had asked the court to further explain the nature of third-degree sexual abuse, we cannot see how it would have changed the outcome of the proceedings. "The overriding question is whether defendant, on the whole record, understood the elements of the crime and the nature of the charge against him." *State v. Oberbreckling*, 235 N.W.2d 121, 122 (Iowa 1975) (citing *State v. Watts*, 225 N.W.2d 143, 144–45 (Iowa 1975)). During the PCR trial there was no testimony indicating Faulkner was confused by the

charges or the elements of the crime. Instead, he focused on counsel's alleged failure to adequately explain the consequences of pleading guilty as opposed to going to trial. Hence, we find the pleas were voluntary and intelligent based on the record in this appeal.

We find Faulkner failed to show plea counsel rendered ineffective assistance in advising him to accept the State's offer and to plead guilty. Plea counsel credibly testified he thoroughly explained the plea agreement to Faulkner and believed there was sufficient evidence for a jury to convict Faulkner of four forcible felonies if the case went to trial. Faulkner understood he faced the possibility of a forty-year sentence at trial, and plea counsel advised him to accept a favorable plea deal where he would face no more than twenty years in prison. The record of the plea proceedings and long colloquy shows Faulkner was aware of the risks of going to trial, accepted the State's offer, and knowingly and voluntarily pled guilty given those risks. Faulkner has not met his burden of proving plea counsel breached an essential duty. In the words of the PCR court:

> The State was . . . aware of the potential weaknesses in the case which likely accounts for what appears to have been a very generous plea proposal. No one had a crystal ball to know for certain how the victim would have testified had there been a trial. Although some attorneys may have given different advice [plea counsel's] opinion that Faulkner should take the deal cannot be characterized as unreasonable.
> . . . .
> . . . In the court's opinion, he made a reasonable decision to accept the State's plea offer after receiving appropriate legal advice and explanations from the [plea] court. There is no basis for believing he was prejudiced by anything [plea counsel] or the [plea] court did or failed to do.

We agree and find plea counsel performed within the reasonable legal competence expected.

**Prejudice.**

Faulkner urges us to conclude prejudice resulted from trial counsel's alleged failures because he would not have pled guilty but for the alleged failures. *See State v. Carrol*, 767 N.W.2d 638, 641 (Iowa 2009) ("In the context of a guilty plea, an applicant for postconviction relief must prove 'a reasonable probability that, but for counsel's alleged errors, he [or she] would not have plead guilty and would have insisted on going to trial.'" (alteration in original) (citation omitted)). "Under Iowa law, we should look to the cumulative effect of counsel's errors to determine whether the defendant satisfied the prejudice prong of the *Strickland* test." *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012). Finding no deficient performance on the part of trial counsel, we need not reach the prejudice prong. *Ledzema*, 626 N.W.2d at 142. In any event, by pleading guilty, Faulkner recognized he could reduce a potential forty-year sentence to a lesser term and spend less time away from family. Even Faulkner's PCR counsel referenced the favorable nature of the plea agreement offered to Faulkner when he questioned plea counsel:

> Q. And did you ever wonder why the—the prosecutors would offer you such a plea deal considering the age of the alleged victim and the fact that there were more than two counts? Would that have led you to believe that there was something wrong with the—the weight of the State's case? A. Well, having prosecuted before, it looked to me like a messy case from a prosecutor's viewpoint because—
>
> Q. Then why didn't you take it to a jury? A. Because I—I thought in the end the jury, if there were parents on board, which there likely would be, would see through this domestic situation, and there was just—there was testimony all over the place, and I—I thought he would likely be convicted of a forcible felony.

So, we find it unlikely Faulkner would have proceeded to trial and agree with the district court that Faulkner failed to prove prejudice by a preponderance of the evidence.

**Conclusion.**

We agree with the PCR court that plea counsel did not render ineffective assistance in advising Faulkner to enter the *Alford* guilty pleas. The record shows Faulkner understood the plea agreement and voluntarily entered into the *Alford* guilty pleas to avoid the risks of a trial. Faulkner has not demonstrated that providing more detailed information about the nature and elements of the charges would have swayed him to take his case to trial. Therefore, we affirm the denial of his application for PCR.

**AFFIRMED.**