# IN THE COURT OF APPEALS OF IOWA

No. 22-0701
Filed June 7, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**YARRELL ARTO FISHER JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

The defendant challenges his convictions for third-degree burglary and second-degree criminal mischief and the sentences imposed in two cases. **CONDITIONALLY AFFIRMED AND REMANDED.**

Debra S. De Jong, Orange City, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Greer, P.J., Schumacher, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**POTTERFIELD, Senior Judge.**

In FECR353225, a jury found Yarrell Fisher Jr. guilty of third-degree burglary (count I), second-degree criminal mischief (count II), and third-degree harassment (count III). Fisher challenges his convictions on counts I and II, arguing the State presented insufficient evidence to support the convictions and the greater weight of credible evidence supports acquittal. Fisher was sentenced in FECR353225 and a second case, FECR352573,[1] at a combined sentencing hearing; he challenges some of those sentences, claiming the district court abused its discretion in denying his request for probation and imposing incarceration. He also argues the court failed to state adequate reasons on the record for ordering him to serve the sentences in FECR353225 consecutive to the sentences imposed in FECR352573.

**I. Background Facts and Proceedings.**

The State alleged that Fisher broke into the home of his friend, Sandra, and caused significant damage to her personal property and the property of her landlord. In FECR353225, Fisher was charged with burglary in the third degree, criminal mischief in the second degree, and harassment in the first degree. He pled not guilty, and the case proceeded to a multiple-day jury trial in February 2022.

At trial, Sandra testified that she and Fisher had been friends for several years. Sometimes they spent time together at her home—a unit in a duplex— which she rented from the property owner. Sandra and Fisher hung out at her home on Saturday, October 9, before going downtown and spending time with

---

[1] In FECR352573, Fisher pled guilty to third-degree criminal mischief, first-degree harassment, and fourth-degree criminal mischief.

separate friend groups later that night. Fisher picked Sandra up from a friend's home on Sunday morning and drove her back to her house. They spent a few more hours in the home—until Sandra's mother called to ask if Sandra was coming over for her birthday party. Although she did not want to, Sandra took Fisher with her to her parents' home for the birthday party; they were there only a short time before Fisher wanted to leave. Sandra drove him back to her house, where he was supposed to have a ride waiting to pick him up. When his ride did not immediately show, Sandra left Fisher outside her home and went back to her birthday party. Sandra stopped by her home Sunday night and again Monday morning; Fisher was not there and nothing was amiss. Then, later on Monday, while at her parents' home, Sandra received a message from Fisher; it said, "Bitch I'm going to get you evicted." Before she was able to take a screen shot, Fisher unsent the message. He sent a second message that said, "Bitch ima kill you." Sandra took a screenshot of this message, which also included a notification line above it stating, "Yarrell unsent a message"; the screenshot was admitted as evidence at trial. The messages from Fisher prompted Sandra to return to her home, and she arrived within ten or fifteen minutes. She found her home in disarray, with ceiling fan blades and cupboards doors ripped off, internal doors destroyed, and a running bathtub that was nearly overflowing. The door was ripped off the microwave and the refrigerator had been pulled from its place, with the water line damaged. Sandra also found some of her clothes in the living room with bleach poured on them and the carpet, her television cracked, and damage to her furniture. She testified the value of her damaged property was $5000.

Jeffrey, who was staying in the second duplex unit on October 11, testified he was downstairs playing video games when he heard "loud thumping and banging, like stuff was being thrown around or dropped." He went upstairs, saw no one was in his unit, and then went outside to smoke. While he was standing on the front porch, he saw Fisher exit Sandra's home. When asked, Fisher said he had been causing the banging noises. Then Fisher left, walking down the street. According to Jeffrey, Sandra showed up just a short time later.

Sandra called the local police when she saw the state of her home. A crime scene investigator, Krystal Warren, processed the scene for latent prints. She testified she noticed the refrigerator had been pulled from its place and thought the surface may yield prints; she was able to pull a partial palm print from the back of the refrigerator. Later, she analyzed the palm print in comparison to the known prints of both Sandra and Fisher. According to Warren, the palm print matched Fisher's.

The owner of Sandra's home testified at trial; he stated he got a quote from a builder that it would cost $15,900 "just to get [the home] back to what it was prior to being vandalized."

Fisher elected not to testify. And he did not put forth any evidence before resting his case. After deliberating, the jury found Fisher guilty as charged.

After trial, Fisher filed a combined "motion for new trial and motion in arrest of judgment." He claimed the jury's guilty verdicts on third-degree burglary and second-degree criminal mischief were contrary to the weight of the evidence. The district court took up the motions at the sentencing hearing. After each party made argument, the court ruled from the bench, stating:

As to motion I regarding counts I and II, when viewing the evidence in the light most favorable to the verdict on these counts, the jury's verdict was not contrary to the weight of the evidence on count I as charged, burglary in the third degree.

The jury's guilty verdict was not contrary to the weight of the evidence on Count II as charged, criminal mischief in the second degree. Both motions should be denied, and I'm denying both motions.

The district court entered a written order with the same statements.

Having denied Fisher's post-trial motions, the court proceeded to sentence Fisher in both FECR353225 and FECR352573. Fisher asked the court for deferred judgments on all of his convictions. Alternatively, he asked the court to impose suspended prison sentences with probation. The State asked the court to impose a total of five years in FECR353225 and a total of five years in FECR352573, with the sentences in the two cases running consecutive to each other for a total of ten years of incarceration. In FECR353225, the court sentenced Fisher to five years on each of the "D" felonies—third-degree burglary and second-degree criminal mischief—and ordered Fisher to serve those concurrently, for a total of five years. In FECR352573, the court sentenced Fisher to two years for third-degree criminal mischief, two years for first-degree harassment, and one year for fourth-degree criminal mischief. The court ordered him to serve those three sentences consecutively, for a total of five years in FECR352573. Additionally, Fisher was required serve the five-year term for each case consecutively, for a total of ten years overall.

Fisher appeals.

## II. Discussion.

### A. Sufficiency of the Evidence.

Fisher challenges the sufficiency of the evidence supporting two of his convictions. "In determining whether there was substantial evidence, we view the evidence in the light most favorable to the State." *State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997). "Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "In determining if there was substantial evidence, we consider all of the evidence in the record, not just the evidence supporting a finding of guilt." *Id.*

### 1. Third-Degree Burglary.

For Fisher to be properly convicted of third-degree burglary, the State had to prove:

> 1. On or about October 11, 2021, [Fisher] entered the residence of Sandra . . . .
> 2. The residence of Sandra . . . was an occupied structure as defined in Instruction No. 20.
> 3. [Fisher] did not have permission or authority to enter the residence of Sandra . . . .
> 4. The residence of Sandra . . . was not open to the public.
> 5. [Fisher] did so with the specific intent to commit the crime of criminal mischief when the cost of repairing or replacing the property is more than $1500.

Fisher challenges the evidence to support three of the elements. He argues the State failed to prove (1) he was the one who entered Sandra's home and caused the damage; (2) he did not have permission or authority to enter the home; and (3) that he entered with the intent to commit more than $1500 in damages. *See State v. Williams*, 674 N.W.2d 69, 71 (Iowa 2004) ("At trial, the State must prove every element of the crime charged beyond a reasonable doubt.").

**Identity of perpetrator.** Viewing the evidence in the light most favorable to the verdict, we have little trouble finding substantial evidence to support the jury's conclusion that Fisher was the perpetrator. Sandra testified he sent her a message stating that he was going to get her evicted. She returned home within approximately fifteen minutes to find her property and the property of her landlord damaged. Not long before Sandra returned to her home, Jeffrey heard loud banging come from the home and, shortly thereafter, saw Fisher leaving Sandra's home. Fisher told him that he was responsible for the noises.

**Permission or authority to enter.** Sandra's landlord testified that Fisher was not named on the rental lease—only Sandra and her husband were included. And Sandra testified that Fisher "did not have any right to come back to [her] house or be at [her] house without [her] there." According to her, Fisher was not staying with her, did not have a key, and did not have any items that he left in her home. Because Fisher did not have "any possessory or occupancy interest in [Sandra's home] at the time" of this incident, *State v. Hangedorn*, 679 N.W.2d 666, 670 (Iowa 2004), he did not have the authority to enter without Sandra's permission, which she did not give. The State proved this element.

**Specific intent.** Fisher claims there was insufficient evidence to support a finding he entered Sandra's home with the intent to cause more than $1500 in damages. But, as we have repeatedly stated, "[p]roof of specific intent is 'seldom susceptible to proof by direct evidence.'" *State v. Ernst*, 954 N.W.2d 50, 57 (Iowa 2021) (citation omitted). And "[w]here the evidence shows that a defendant deliberately takes action resulting in damage, a reasonable jury can 'logically infer that [the defendant] intended the natural consequences of that action.'" *State v.*

*Hofer*, No. 19-0823, 2020 WL 3264398, at *4 (Iowa Ct. App. June 17, 2020) (quoting *State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998)). Here, Fisher told Sandra he was going to get her evicted and then, almost immediately after, was seen leaving her home, where immense damage had been done. Plus, the scope of the damage—ripped off cupboard doors and ceiling fan blades, destroyed appliances, a plugged tub left running, bleach poured on clothing and the carpet, and more—and that it occurred throughout the unit supported the conclusion that it was done intentionally.

Substantial evidence supports Fisher's conviction for third-degree burglary.

**2. Second-Degree Criminal Mischief.**

For Fisher to be properly convicted of second-degree criminal mischief, the State had to prove:

> 1. On or about October 11, 2021, [Fisher] damaged and/or destroyed property belonging to Sandra . . . and/or [Sandra's landlord].
> 2. [Fisher] acted with the specific intent to damage and/or destroy the property.
> 3. When [Fisher] damaged and/or destroyed the property, Defendant did not have the right to do so.

As with the burglary conviction, Fisher challenges whether substantial evidence supports the conclusion he was the one who caused the damage in Sandra's home and whether the evidence shows he did so with specific intent. For the same reasons we already stated, we conclude it does.

Substantial evidence supports Fisher's conviction for second-degree criminal mischief.

**B. Weight of the Evidence.**

Fisher challenges the weight of the evidence supporting his convictions for third-degree burglary and second-degree criminal mischief. He points out what he believes are credibility issues for some of the State's witnesses and suggests we should not credit their testimony.

Generally, we review a district court's ruling on a motion for "new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). Our review "does not extend to 'the underlying question of whether the verdict is contrary to the weight of the evidence.'" *Id.* at 707 (citation omitted). This makes sense because deciding a motion for new trial based on the weight of the evidence requires consideration of "whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict." *Id.* at 706 (citation omitted). It is up to the district court, who sat through trial, to determine the credibility of the various witnesses. *Id.* In reaching its decision regarding the weight of the evidence, the district court is not to view the evidence in the light most favorable to the verdict. *See State v. Ellis*, 578 N.W.2d 655, 657 (Iowa 1998) ("[A] trial court must consider both inculpatory and exculpatory evidence in deciding motions for new trial.); *see also State v. Reeves*, 670 N.W.2d 199, 209 (Iowa 2003) ("[W]e conclude the district court properly applied the weight-of-the-evidence standard in considering the motion for new trial . . . . [T]he court carefully weighed the evidence, determined credibility, and gave sufficient reasons for its decision that the verdict was contrary to the weight of the evidence.").

In Fisher's case, the district court made no credibility findings and declared it was viewing the evidence in the light most favorable to the verdicts. This is the wrong standard. So, we conditionally affirm Fisher's convictions for third-degree burglary and second-degree criminal mischief in FECR353225.[2] *See, e.g.*, *State v. Curtis*, No. 04-1878, 2005 WL 1398337, at *2 (Iowa Ct. App. June 15, 2005). We reverse the district court's ruling on the motion for new trial and remand for the court to apply the correct standard.[3] *See Ary*, 877 N.W.2d at 707 (reversing the district court ruling on the motion for new trial and remanding the case to the district court to apply the correct standard in considering the motion).

**C. Sentencing.**

Fisher challenges his sentences in FECR353225 and FECR352573; he argues the district court abused its discretion in denying his request for probation and imposing incarceration and that the court failed to state adequate reasons on the record for the sentences imposed, including ordering him to serve the sentences in FECR353225 consecutive to the sentences imposed in FECR352573.[4]

At one point during the sentencing, the court stated the following:

> The Court determines that this sentence will provide maximum opportunity for Defendant's rehabilitation and protection of the community from further offenses.

---

[2] We do not disturb Fisher's other convictions; they were not at issue in his motion for new trial or on appeal.

[3] If the court denies Fisher's motion for new trial, then his convictions stand affirmed. If, however, the court grants Fisher's motion for new trial, then his convictions shall be vacated and a new trial shall be granted.

[4] Fisher pled guilty to the crimes in FECR352573. But as the State recognizes, because Fisher is challenging his sentences, which were neither mandatory nor agreed upon, he has good cause for this appeal. *See State v. Damme*, 944 N.W.2d 98, 100 (Iowa 2020); *see also* Iowa Code § 814.6(1)(a)(3) (2021).

> Pursuant to Iowa Code section 907.5, the Court has considered the following factors: Defendant's age; Defendant's prior record of convictions and deferments of judgment, if any; Defendant's employment circumstances; Defendant's family circumstances; Defendant's mental health and substance abuse history and treatment options available in the community and in the correctional system; and the nature of the offenses committed.

Fisher argues this statement "cannot be enough. If this is sufficient, it would mean the only requirement of the court is to basically read Iowa Code section 907.5 into the record." And he's not wrong. Our courts "have rejected a boilerplate-language approach that does not show why a particular sentence was imposed in a particular case." *State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015); *accord id.* at 410 ("[S]uch boilerplate language, standing alone, is insufficient to satisfy Iowa Rule of Criminal Procedure 2.23(3)(d)."). But here, the court said more. After the parties' arguments but before pronouncing the sentences, the court stated:

> The Court has considered the factors and circumstances surrounding the offenses charged as well as the jury's verdict in the case that went to trial. The Court considered the statements and recommendations of counsel for Plaintiff and counsel for Mr. Fisher. This is a contested resolution.
>
> I also considered Mr. Fisher's statement to the Court, which the Court finds sincere, and he was given the opportunity to speak in mitigation of sentence, as I just indicated. The only remaining matter, therefore, for the Court at this time is sentencing in Case Nos. FECR 353225 and FECR 352573.

"While the sentencing court could have delivered a more personalized rationale, its statements rose above the dreaded boilerplate." *State v. Landis*, No. 17-1369, 2018 WL 6720036, at *4 (Iowa Ct. App. Dec. 19, 2018). And we do not require the court "to acknowledge each mitigating factor urged by the defendant, and just because the court did not mention a factor that does not mean the factor was not

considered." *State v. Haler*, No. 20-1349, 2021 WL 2708947, at *2 (Iowa Ct. App. June 30, 2021) (citing *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995)).

While Fisher complains the court did not consider or place enough weight on certain factors—such as his age of twenty-four, his mental-health and substance-abuse needs, and the recommendation of the presentence investigation preparer that he receive suspended sentences with probation if he would attend inpatient treatment—he really takes issue with the fact that the court chose to sentence him to terms of incarceration. Disagreeing with the court's ultimate sentencing decision is not enough to establish an abuse of discretion. *See State v. Stanley*, 344 N.W.2d 564, 567 (Iowa 1983) ("An abuse of discretion will not be found unless the defendant shows that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable."); *see also Damme*, 944 N.W.2d at 105–06 ("A sentencing court's decision to impose a specific sentence that falls within the statutory limits 'is cloaked with a strong presumption in its favor . . . .'" (citation omitted)).

Finally, Fisher maintains the court failed to provide adequate reasons on the record for ordering consecutive sentences. *See State v. Hill*, 878 N.W.2d 269, 273 (Iowa 2016) (imposing the requirement of Iowa Rule of Criminal Procedure 2.23(3)(d) to state on the record reasons for imposing a particular sentence to the decision to impose consecutive sentences). Here, the district court stated, "The sentences which are consecutive are consecutive based upon the separate and serious nature of the offenses." This explanation is terse and succinct, but it does not preclude our review of the district court's exercise of judgment. *See State v. Victor*, 310 N.W.2d 201, 205 (Iowa 1981) (concluding the

sentencing court met the requirement to provide reasons for the sentence imposed when "[t]he brevity of the court's statement of reasons" did not prevent "review of the sentencing discretion" because it was "clear from the trial court's statement exactly what motivated and prompted the sentence"). So we find no error.

We find no reversible error or abuse of discretion involved in the sentencing of Fisher.

**III. Conclusion.**

Substantial evidence supports Fisher's challenged convictions. However, because the district court applied the wrong standard on his motion for new trial, we conditionally affirm Fisher's convictions and remand for the court to consider the motion for new trial, using the correct standard. If the court grants the motion, then Fisher shall receive a new trial. If the court denies the motion, Fisher's convictions are affirmed. Assuming his convictions stand, we find no reversible error or abuse of discretion in the sentencing of Fisher.

**CONDITIONALLY AFFIRMED AND REMANDED.**