# IN THE COURT OF APPEALS OF IOWA

No. 18-1032
Filed April 15, 2020

**SANTONYO SIMA PENDLETON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

Santonyo Pendleton appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Mark C. Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee State.

Considered by Doyle, P.J., May, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAHAN, Senior Judge.**

Santanyo Pendleton appeals the district court's denial of his application for postconviction relief following his 2015 convictions of sexual abuse in the third degree, raising claims of ineffective assistance of counsel and prosecutorial misconduct. Upon our review, we affirm the court's order denying Pendleton's application for postconviction relief.

**I.** ***Background Facts and Proceedings***

In its opinion affirming Pendleton's conviction on direct appeal, this court set forth the following facts:

> On December 3, 2014, shortly before 2:00 a.m., Waterloo police officers responded to a 911 call regarding a nonresponsive woman at Pendleton's home. Although officers and medics attempted resuscitation, the woman never regained consciousness and was later pronounced dead. An autopsy indicated the woman died accidentally as a result of "acute mixed drug intoxication." At the time of the woman's death, she had a blood alcohol content of .344 and had methamphetamine in her system. The medical examiner opined that either the alcohol or the methamphetamine could have caused her death on its own but death likely resulted from the combined effect of the substances.
>
> As part of the investigation immediately following the woman's death, officers took and searched Pendleton's cellular phones. Text messages on the phones corroborated Pendleton's claim that he and the woman had met to engage in a consensual sexual encounter. However, the officers recovered three videos from Pendleton's phones that were recorded in the early morning hours of December 3, one of which showed him digitally penetrating the woman while she appeared to be asleep or unconscious. . . .
>
> . . . . In the main video, Pendleton records the woman naked and laying in a bed. Pendleton can be heard saying, "She's drunk as hell, tripping out." He moves her hair from her face, and the woman remains with her eyes shut; she does not respond. Thirty-nine seconds into the video, the woman can be seen opening and closing her mouth. Less than thirty seconds later, Pendleton begins digitally penetrating the woman. She does not visibly respond, and Pendleton narrates, "She's drunk as hell; look at this shit." The entire video lasts one minute and thirty-five seconds, and the woman never opens her eyes or reacts to either Pendleton's actions or comments.

*State v. Pendleton*, No. 15-1115, 2016 WL 4384653, at *1 (Iowa Ct. App. Aug. 17, 2016).

The State charged Pendleton with sexual abuse in the third degree, in violation of Iowa Code section 709.4(1)(d) (2015) ("A person commits sexual abuse in the third degree when the person performs a sex act . . . [and t]he act is performed while the other person is mentally incapacitated, physically incapacitated, or physically helpless."). Following trial, the jury found Pendleton guilty as charged. Pendleton admitted he was an habitual offender. The district court sentenced him to a term of incarceration not to exceed fifteen years, with a three-year mandatory minimum.

This court affirmed Pendleton's conviction on direct appeal, rejecting his challenges to trial counsel's failure to request the jury be instructed on lesser-included offenses and the limited purpose for which an interrogation video could be considered and trial counsel's failure to move for judgment of acquittal on the basis the State did not prove the decedent was still alive at the time of the sex act. *See id.* at *3–4. The court determined, "Because the evidence of Pendleton's guilt is overwhelming, Pendleton is unable to establish how counsel's alleged failures affected the result of the proceeding." *Id.* at *3.

Pendleton filed an application for postconviction relief (PCR), which was amended through counsel. Following trial, the court entered an order denying Pendleton's application. Pendleton appealed. Facts specific to his claims on appeal will be set forth below.

## II.    Standards of Review

"Generally, an appeal from a denial of an application for postconviction relief is reviewed for correction of errors at law." *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016) (citation omitted).  However, "ineffective-assistance-of-counsel claims are reviewed de novo." *Id.*

## III.    Ineffective Assistance of Counsel

Pendleton contends his trial counsel was ineffective in failing to call his sister, Jalila, to testify at trial and PCR counsel was ineffective in failing to argue Jalila's "testimony could have advanced the consent theory of the defense that was presented and a no-knowledge theory that should have been presented."  To prevail on a claim of ineffective assistance of counsel, Pendleton must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "[C]ounsel has no duty to raise an issue that has no merit." *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009).  A claim of ineffective assistance of counsel fails if either element is lacking. *See State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012).

Jalila testified at the PCR trial.  She stated she was at Pendleton's home when the woman arrived on the night of the incident.  Jalila testified the woman "just looked a little bit, like, off I would say.  Like she wasn't—like she was there but she wasn't." According to Jalila, Pendleton and the woman walked to the store for drinks and when they got back, they appeared to be getting along; "They were laughing and giggling."  Jalila stated Pendleton and the woman went into a bedroom; the door was halfway open, and Jalila could hear them playing music,

talking, "taking pictures," and engaging in sexual activity. Later, Pendleton asked Jalila for help because he thought the woman was "dead." Jalila stated that Pendleton's attorney, Nichole Watt, "talked to me about what [she] saw" and told her that she "might" be called as a witness. Jalila also completed a written statement about what she had seen, which she provided to Attorney Watt.

Attorney Watt also testified at the PCR trial. She explained the defense theory as follows:

> My defense in this case was if the girl—if the woman had not died and she were alive to come and testify, would she have cared that this happened to her. Would she have still claimed that she didn't consent to it in some way since they had already had sex twice. I mean, would she have been happy to have this done to her if it had woken her up.

Attorney Watt also stated, "I did [also] try to argue that she wasn't incapacitated, but she was definitely snoring [in the video]." Attorney Watt explained that she "wrote out questions for all potential witnesses in this case." She stated she talked to Jalila and Pendleton's mother, but "we decided that there also was no need for their testimony because it really had nothing to do with our defense. It was things that they would have seen, but they didn't add anything to our case." Attorney Watt testified her decision not to call Jalila to testify was a "tactical decision." *Cf. Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (noting "strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable'" (quoting *Strickland*, 466 U.S. at 690–91)).

The PCR court observed that Attorney Watt argued the act was consensual. The PCR court rejected Pendleton's claim with regard to Jalila's testimony as a tactical decision by counsel, further finding, "Her testimony per the affidavit added

no facts not already contained in the trial record." We agree and further conclude that Pendleton is unable to establish *Strickland* prejudice. The video from Pendleton's phone clearly shows the woman naked and snoring, while Pendleton stated "she drunk as hell, trippin' out," "she ready for this dick," "she drunk as hell, look at this" as he penetrated her vagina with his fingers. While Pendleton claimed he was "joking" and "just playing around,"[1] the video speaks for itself and dispels any question that Pendleton was not aware the woman was incapacitated or that she consented to the sexual acts. Considering the overwhelming evidence of Pendleton's guilt, there is no reasonable probability of a different result had Jalila been called to testify. *Cf. State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019) (holding defendant did not establish *Strickland* prejudice where there was overwhelming evidence of guilt and the challenged testimony was merely cumulative). We affirm on this issue.

## IV.    *Prosecutorial Misconduct*

Pendleton raises a claim of prosecutorial misconduct relating to the prosecutor's closing argument, arguing the prosecutor "misrepresented" the statements of a physician and defense counsel during trial. Pendleton acknowledges "this issue was not raised in district court proceedings or on appeal." Pendleton also makes a fleeting reference to PCR counsel's failure to raise the issue. Because this claim was not raised before or decided by the PCR court, it is unpreserved for our review, and we decline to address it. *See Lincoln v. State*,

---

[1] We observe the PCR court described Pendleton's credibility at the PCR trial as "laughable," and the court further stated, "Pendleton's claim he was looking for cigarettes when the video clearly shows him digitally penetrating [the woman] was a blatant disregard for the truth."

No. 18-0285, 2019 WL 6358303, at *2 (Iowa Ct. App. Nov. 27, 2019) (declining to reach claim of ineffective assistance of PCR counsel that was not raised "in any form below"); *see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Having addressed those claims properly before us on appeal, we affirm.

**AFFIRMED.**