# IN THE COURT OF APPEALS OF IOWA

No. 22-2104
Filed May 22, 2024

**JUSTIN MICHAEL STICKROD,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Monroe County, Myron Gookin, Judge.

Justin Stickrod appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

Following a jury trial, Justin Stickrod was convicted of sexual abuse in the first degree and child endangerment resulting in serious injury. Our court affirmed his convictions on appeal. *See generally State v. Stickrod*, No. 17-0509, 2018 WL 1433065 (Iowa Ct. App. Mar. 21, 2018). Stickrod then filed an application for postconviction relief. In the application, he raised multiple claims of ineffective assistance of trial counsel. The district court rejected the claims and denied Stickrod's application.

Stickrod appeals. He raises only one issue on appeal. He argues his trial counsel was ineffective for failing to move for a mistrial after statements made by a prospective juror during jury selection.

During jury selection, Stickrod's trial counsel questioned the jurors on their beliefs about a defendant's need to present a defense, trying to educate them about which party bears the burden of proof. Trial counsel asked the prospective jurors whether a defendant should have to put forth a defense, sparking a conversation with one of the prospective jurors. The following back-and-forth between defense counsel and the prospective juror occurred:

> DEFENSE COUNSEL: I am not talking about this case. I am talking generally. That's my hypothetical.
> PROSPECTIVE JUROR: We have to hear the evidence before we decide what it is.
> DEFENSE COUNSEL: I understand that[.] I am talking hypothetically. We're not talking about this case. Right?
> PROSPECTIVE JUROR: He is guilty.
> DEFENSE COUNSEL: Who is guilty?
> PROSPECTIVE JUROR: Whoever done it. He confessed he done it.
>  . . . .
> DEFENSE COUNSEL: What if he did not present a defense, any evidence?

PROSPECTIVE JUROR: Somebody has evidence somewhere, either the prosecution or the defendant.

DEFENSE COUNSEL: And, again, [sir], specifically I am talking about the defendant.

PROSPECTIVE JUROR: He is guilty.

DEFENSE COUNSEL: And nothing could change your mind about that?

PROSEPCTIVE JUROR: No.

Stickrod's counsel moved to strike the prospective juror for cause, but the court allowed the State to ask a few follow-up questions. In response to this questioning, the prospective juror affirmed that he would wait to make a decision about Stickrod's guilt until after he had heard all the evidence and that he would not consider Stickrod to be guilty simply because he did not present his own evidence. After confirming that the prospective juror would be willing to follow the law and the court's instructions, the court denied Stickrod's for-cause challenge. Stickrod used a peremptory challenge to strike the prospective juror.

We review ineffective-assistance-of-counsel claims de novo. *State v. Zacarias*, 958 N.W.2d 573, 580 (Iowa 2021). The United States and Iowa Constitutions guarantee defendants effective assistance of counsel. U.S. Const. amend. VI; Iowa Const. art. I, § 10; *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). Applicants claiming ineffective assistance of counsel must prove by a preponderance of the evidence that (1) their trial counsel failed to perform an essential duty and (2) that such failure resulted in prejudice, which is established by showing a reasonable probability that, but for counsel's failure to perform an essential duty, the result of the proceeding would have been different. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). We presume Stickrod's trial counsel performed competently, recognizing the range of sound trial strategies counsel

may have been pursuing. *See State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006). "[M]ere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Anfinson v. State*, 758 N.W.2d 496, 501 (Iowa 2008) (alteration in original) (quoting *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001)). Even if Stickrod can prove his trial counsel breached an essential duty, he must still prove prejudice by showing there is a reasonable likelihood the result of his trial would have been different without counsel's error. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015). "If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021) (quoting *Ledezma*, 626 N.W.2d at 142).

We exercise our discretion to decide this case on the prejudice prong. Stickrod has failed to establish prejudice from trial counsel's failure to request a mistrial because Stickrod fails to explain how the outcome would have been different if a mistrial had been granted and he was tried before a different jury. Stickrod has not pointed to anything in the record suggesting other prospective jurors shared the possible confusion expressed by the prospective juror at issue regarding whether Stickrod had confessed or what the evidence against him would be. At the time of the statement that "he confessed," the lawyers had been speaking to all prospective jurors in the hypothetical and, after the statement, defense counsel continued to clarify that the discussion was not about Stickrod but rather a hypothetical defendant. By the time of the exchange with the prospective juror at issue, defense counsel had already discussed with all the prospective jurors that Stickrod was presumed innocent until proved guilty and that it was the

State's burden to prove Stickrod's guilt. Both concepts were also briefly touched on afterward. The statement that Stickrod was guilty and had confessed was bookended by statements from the prospective juror at issue that he would have to hear all the evidence before finding Stickrod guilty or not guilty and that he would not necessarily find Stickrod guilty. These statements negate the concern that other prospective jurors would somehow believe that Stickrod had confessed based on the statements by the prospective juror at issue. Finally, when the prosecutor followed up, the prospective juror at issue ended the dialogue by saying it was taking too long to pick jurors, informing the rest of the prospective jurors that impatience drove the statements by the prospective juror at issue. Thus, Stickrod fails to show any confusion about the burden of proof or presumption of innocence by other prospective jurors or that any other prospective jurors took the statements by the prospective juror at issue to mean that Stickrod had confessed. *See State v. Neuendorf*, 509 N.W.2d 743, 747 (Iowa 1993) ("Any claim that the jury that did serve in the case was not impartial must be based on matters that appear of record.").

Moreover, the overwhelming evidence against Stickrod convinces us that a new jury would still have found him guilty.[1] In its opinion on direct appeal, this court summarized the evidence presented at trial:

---

[1] We note that State's exhibits 15–22 are missing from the underlying criminal record submitted to our court. These exhibits are photographs, the contents of which were described during the trial. The parties have not made these exhibits an issue in this postconviction-relief proceeding, nor have they made any reference or citation to them in their briefs. To avoid further delaying Stickrod's appeal, and because we are aware of what the photographs depict from our review of the trial transcript, we have chosen to decide the appeal despite the absence of these exhibits in our record.

On February 4, 2016, Stickrod was home alone with his two-month-old daughter for approximately two and one-half hours while his wife went to a doctor appointment and ran errands. Stickrod was asleep or passed out when she returned. The baby was in a swing wearing only a diaper and was crying in an unusual way. The mother discovered blood in the infant's diaper. She attempted to wake Stickrod but was unable to do so. The mother took the child to the county hospital.

Registered nurse Christine Arauco was the first person to examine the baby girl, observing the child exhibited "mild distress" whimpering and crying. Nurse practitioner Nicole Topliff noted the child's "vaginal opening was gaping" and bleeding. Nurses observed tearing, bruising, redness, swelling, and a small amount of stool in the vaginal area. The child's mother testified a nurse informed her that the child had been sexually abused. Law enforcement was called.

The child was transported by ambulance to Blank's [sic] Children's Hospital. Sexual assault nurse examiner Shannon Knudsen and Dr. Kenneth McCann examined the baby upon arrival at Blank and observed redness, swelling, bruising, and bleeding of the external genitalia with bilateral lacerations of the hymen and posterior fourchette. They also observed stool in the vaginal vault. . . . Both the nurse and doctor opined the child's injuries resulted from inflicted trauma.

[With the child u]nder anesthesia, Dr. Onyebuchi Ukabiala, a pediatric surgeon, was able to examine the child's injuries further. Dr. Ukabiala testified the bridge of tissue between the anal and vaginal openings was "completely disrupted. It was torn. It was blown apart." . . .

. . . .

Both Doctors Ukabiala and McCann opined the baby's injuries were caused by forcible attempted penetration.

. . . .

Stickrod and the mother were the only caretakers on the day of the injury. Stickrod was solely responsible for the child's care when the bloody diaper was first observed. Stickrod was sitting on the sofa with the child when the mother left to run some errands. When the mother returned she heard the child crying and Stickrod was either passed out or asleep in bed. Medical testimony reflected the injuries were from inflicted trauma.

*Stickrod*, 2018 WL 1433065, at *1–3 (footnote omitted). Because Stickrod had challenged his counsel's failure to object to DNA evidence presented at trial on direct appeal, the above account leaves out the fact that upon Stickrod's arrest

later the same day, the police took his clothing and sent his underwear to the Iowa Division of Criminal Investigation (DCI) crime lab for forensic testing. A DCI technician testified to finding the child's DNA inside the fly area of Stickrod's underwear. Even without considering the incriminating DNA evidence, our court has already concluded there is "not a substantial likelihood of a different result." *Id.* at *3. Stickrod has not established any reasonable probability of a different result at a second trial, so he has failed to show prejudice.

Stickrod failed to demonstrate any prejudice caused by his trial counsel's failure to move for a mistrial. As there is no substantial likelihood that a different jury would come to a different result, we affirm.

**AFFIRMED.**